PETITIONER

BY SPECIAL APPEARANCE ONLY

AMBASSADOR Michael Parsons OF THE SOVEREIGN TSILHQOT'IN NATION-COUNTRY OF THE CHILCOTIN, A LIVE MAN UNDER DURESS, WITHOUT PREJUDICE, HELD AGAINST MY WILL AT THE SALINE COUNTY JAIL, WILBER NEBRASKA.

TO.

JUDGE GERRARD

C/o CLERK OF THE U.S. DISTRICT COURT

100 CENTENNIAL MALL, SUITE 587 FEDERAL BUILDING

LINCOLN, NEBRASKA 68508

NOTICE

DEMAND AS A MATTER OF RIGHT, ORDER OF STAY OF ORDER BY JUDGE ZWART TO FORCABLY INJECT ME WITH AN UNKNOWN AND UNSAFE TB TEST OR X-RAY IN VIOLATION OF INTERNATIONAL LAW, THE VIENNA CONVENTION ON DIPLOMATIC RELATIONS, THE UNITED STATES CONSTITUTION AMENDMENT #1, FREEDOM OF RELIGION, 42 U.S.C.§§2000 bb THE RELIGIOUS FREEDOMS RESTORATION ACT, THE MYERS DECISION BY THE U.S. SUPREME COURT AND 28 U.S.C § 1330, AND DISMISS OR TRANSFER THIS MATTER TO THE ARTICLE III SECTION 2 CONSTITUTIONAL COMMON LAW COURT OF ORIGINAL JURISDICTION IN ALL CASES AFFECTING AMBASSADORS,

FACTS

ON SEPTEMBER 22, 2017 I WAS TAKEN AGAINST MY WILL BY FORCE INTO CUSTODY AND HELD AT THE WEST TENNESSEE DETENTION CENTER BY ORDER OF THE UNITED STATES MARSHAL SERVICE (USMS) BUT NEVER GIVEN A REASON. ON DECEMBER 06, 2017 I WAS TAKEN TO LEAVENWORTH KANSAS AND HELD AT THE LEAVENWORTH DETENTION CENTER AGAINST MY WILL. ON DECEMBER 13, 2017 I WAS TAKEN TO SALINE COUNTY NEBRASKA AND HELD IN THEIR JAIL AGAINST MY WILL, THEN ON DECEMBER 18, 2017 I WAS TAKEN TO THE U.S. DISTRICT COURT FEDERAL BUILDING IN LINCOLN NEBRASKA, THEREIN, USMS AGENTS LITERALY THREW ME INTO THEIR COURT. WITH NO ADVANCED NOTICE, I WAS TOLD AN ALL CAPITOL LETTER MICHAEL WAYNE PARSONS, AN UNKNOWN ENTITY WAS

INDICTED ON 1 COUNT OF 18 U.S.C. SECTION 922 (g)(1). I GAVE NOTICE THAT I WAS THE AMBASSADOR OF THE TSILHQOT'IN NATION - COUNTRY OF THE CHILCOTIN AND NOT THE MICHAEL WAYNE PARSONS ENTITY LISTED IN THE INDICTMENT. THAT THE UNITED STATES OF AMERICA CORPORATION LISTED AS PLAINTIFF HAD NO COMPLAINT OR STANDING AGAINST ME. JUDGE ZWART REFUSED TO DISCLOSE THE FORM OF TRIBUNAL SHE WAS CONDUCTING AND I ADVISED HER I DID NOT CONSENT TO BEING THERE AND DID NOT UNDERSTAND ANYTHING SHE WAS DOING.

AT THAT POINT I DISCLOSED (MY CREDENTIALS) AND THE ASSISTANT U.S. ATTORNEY, MR. SHARP, STIPULATED, AS WELL AS THE JUDGE, THAT I AM THE AMBASSADOR OF THE TSILHQOT'IN NATION. FURTHERMORE, I WAS THE BENIFICIARY OF THE TRUST AND THESE FACTS WERE NEVER REBUTTED. AS SUCH, THESE FACTS STAND AS TRUTH. I WAS THEN INFORMED I WOULD BE BROUGHT BACK ON DECEMBER 20, 2017 FOR A DETENTION HEARING. MY VERBAL REQUEST TO DISMISS FOR LACK OF JURISDICTION, MISTAKEN IDENTITY, UNNECESSARY DELAY AND LACK OF ADVANCE NOTICE WERE DENIED.

ON DECEMBER 20, 2017 I WAS ADVISED THE JUDGE WAS ALSO GOING TO HEAR ON A MOTION BY THE UNITED STATES OF AMERICA CORPORATION TO ORDER I BE FORCED TO SUBMIT TO A TB TEST. THIS HEARING WAS ALSO HELD WITH NO ADVANCED NOTICE TO ME. THEN THE USMS AGENT WHO ASSAULTED ME TWO DAYS EARLIER TESTIFIED TO HIS POLICY CLAIMING IT REQUIRED A TB TEST FOR EVERYONE AND CLAIMED THE POLICY HAD REFERENCED THE AUTHORITY TO DO THIS. I WAS ONLY GIVEN THE POLICY AFTER HE COMPLETED HIS TESTIMONY. MY OBJECTION WAS DENIED.

UPON REVIEW OF THE (POLICY HEREIN ATTACHED) YOU SHALL TAKE JUDICIAL NOTICE THAT IT IS SPECIFICALLY FOR "ACTIVE TB" WHEN PEOPLE ARE "SYMPTOMATIC," NOT FOR PEOPLE LIKE ME WHO DO NOT HAVE TB AND ARE NOT SYMPTOMATIC. THEIR POLICY ONLY SHOWS CONGRESS AUTHORIZED FUNDING FOR "HEALTH CARE," NOT FORCED TB TESTING. IT ALSO STATES, "THE USMS CAN NOT REQUIRE INTERGOVERNMENTAL AGREEMENT DETENTION FACILITIES TO PERFORM TB TEST ON PRISONERS." USMS POLICY 9.6 PRISONER AIRBORNE PATHOGEN CONTROL, E4(b).

THE UNDISPUTED FACT IS, I DO NOT HAVE TB. I HAVE NEVER HAD A TB TEST AS PART OF MY NATIVE AMERICAN RELIGION, WHEREBY MY BODY IS MY TEMPLE THROUGH WHICH I DO MY MINISTRY. PUTTING ANYTHING INTO MY BODY THAT I KNOW IS POTENTIALLY HARMFULL OR UNNECESSARY IS AGAINST MY RELIGION. THE MANUFACTURER OF THE TB TEST MATERIAL STATES THEIR PRODUCT IS, "NOT GUARANTEED TO BE SAFE OR EFFECTIVE." THE FACT IS, ONCE SOMETHING IS INJECTED INTO YOU, YOU CAN'T TAKE IT BACK. THERE ARE NO ACTS OF CONGRESS AUTHORIZING THIS TEST. IT VIOLATES INTERNATIONAL LAW, REFLECTED IN THE RELIGIOUS FREEDOMS RESTORATION ACT, TITLE 42 USC 2000bb AND THE U.S. SUPREME COURT MYERS DECISION. FURTHERMORE, 28 U.S.C. 1330 SPECIFIES, NO U.S. COURT HAS AUTHORITY OVER AN AMBASSADOR. THE CONSTITUTION FOR THE UNITED STATES OF AMERICA REPUBLIC STATES THAT, "IN ALL CASES AFFECTING AMBASSADORS, THE SUPREME COURT SHALL HAVE ORIGINAL JURISDICTION... ALL TREATIES MADE, OR WHICH SHALL BE MADE UNDER THE AUTHORITY OF THE UNITED STATES SHALL BE THE SUPREME LAW OF THE LAND, AND THE JUDGES IN EVERY STATE SHALL BE BOUND THEREBY." AND "JUDICIAL OFFICERS... OF THE SEVERAL STATES, SHALL BE BOUND BY OATH OR AFFIRMATION TO SUPPORT THE CONSTITUTION." AS SUCH, THIS MATTER SHALL BE TRANSFERED TO THE ARTICLE III SECTION 2 SUPREME COURT WHICH HAS ORIGINAL JURISDICTION FOR AMBASSADORS AND WHERE THE CONSTITUTION AND TREATIES ARE THE COMMON LAW AND THEREFORE, THE LAW OF THE LAND. AS SUCH, THIS COURT SHALL TAKE JUDICIAL NOTICE THAT THIS AND ALL COURTS OF THE UNITED STATES ARE BOUND TO THEIR TREATIES AND AS A SIGNATORY TO THE VIENNA CONVENTION ON DIPLOMATIC RELATIONS ARTICLE 29 STATES, "THE PERSON OF A DIPLOMATIC AGENT SHALL BE INVIOLABLE. HE SHALL NOT BE LIABLE TO ANY FORM OF ARREST OR DETENTION." ARTICLE 31, "A DIPLOMATIC AGENT SHALL ENJOY IMMUNITY FROM THE CRIMINAL JURISDICTION OF THE RECEIVING STATE. HE SHALL ALSO ENJOY IMMUNITY FROM IT'S CIVIL AND ADMINISTRATIVE JURISDICTION (3) NO MEASURE OF EXECUSION MAY BE TAKEN IN RESPECT OF A DIPLOMATIC AGENT."

IN THE JUDGES (ORDER HEREIN ATTACHED,) ALL OF THE CASES SHE SITED PERTAIN TO MATTERS RULED ON PRIOR TO THE RELIGIOUS FREEDOMS RESTORATION ACT, PERTAIN TO PRISON INMATES WHO HAVE ACTIVE ILLNESS I.E. SYMPTOMS AND NONE OF THOSE CASES INVOLVE PRETRIAL DETAINEES, LIKEWISE, NONE OF THOSE CASES PERTAIN TO AMBASSADORS OF ANOTHER COUNTRY, IT SHOULD ALSO BE NOTED THAT THE U.S. ATTORNEY SPECIFICALLY SITED THE SUPREME COURTS STANDARD FROM THE MYERS CASE THAT APPLY A 3 PRONG TEST AND THE FACT THE AUDIO RECORDING WILL PROVE THAT AS WELL AS THE FACT I HAD PREVIOUSLY ARTICULATED THOSE FACTS FROM MY STATEMENT ABOUT MY RELIGIOUS PRACTICE. THE JUDGES ORDER FAILED TO EVEN MENTION THOSE FACTS. AND IT SHOULD BE NOTED THAT IT APPEARS THE JUDGE IS ACTING AS A PROSECUTOR, THAT IS, SHE ACCORDING TO HER OWN E-MAIL TO THE U.S. ATTORNEY, DISCLOSED HER RESEARCH ON THIS MATTER, DEMONSTRATING HER PREDETERMINED POSITION AND HIS REPLY WAS, "THANK YOU JUDGE. I WILL REVIEW THIS BEFORE OUR HEARING ON WEDNESDAY." CLEARLY THIS IS PROOF SHE IS WORKING TO SUPPORT THE U.S. ATTORNEY GIVING HIM CITATION PREPERATION IN SUPPORT OF HIS POSITION IS PREJUDICIAL AND AS SUCH SHE SHOULD BE REMOVED FROM THIS MATTER AND REPLACED WITH SOMEONE WHO IS IMPARTIAL. A REVIEW OF BOTH DECEMBER 18, AND 20 HEARING DATES WILL CLEARLY DEMONSTRATE JUDGE ZWART IS NOT ACTING AS JUDGE BUT ADVOCATE FOR THE PROSECUTOR. (SEE ATTACHED E-MAIL)

GIVEN THOSE FACTS, INCLUDING PERJURY BY THE USMS AGENT WHO GAVE FALSE AND MISLEADING TESTIMONY IMPLYING A POLICY DESIGNED FOR ONLY ACTIVE TB PRISONERS WHO WERE SYMPTOMATIC AND NOT FOR PRETRIAL DETAINEES WHO DO NOT HAVE TB OR SYMPTOMS WAS FOR NO OTHER PURPOSE THAN TO DENY MY RIGHT TO RELIGIOUS LIBERTY, AND JUDGE ZWARTS ABUSE OF POWER AND ACTS OF OFFICIAL OPPRESSION VIA ORDERS SHE CLEARLY HAD PREDETERMINED IS CRIMINAL AND AS SUCH, THIS CASE AND ALL OF HER ORDERS SHOULD BE AND IT IS DEMANDED THEY BE DISMISSED WITH PREJUDICE AS JUSTICE DEMAND NO LESS, TO CORRECT THIS MANIFEST INJUSTICE.

CERTIFICATE OF SERVICE

PETITIONER, AMBASSADOR Michael Parsons OF THE SOVEREIGN TSILHQOT'IN NATION-COUNTRY OF THE CHILCOTIN, HEREBY CERTIFY THAT THE FORGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND THAT THE FORGOING HAS BEEN GIVEN TO THE CORRECTIONAL OFFICER FOR PLACEMENT INTO THE INSTITUTIONAL MAIL SYSTEM ON THIS DECEMBER 25, 2017 AT THE SALINE COUNTY JAIL IN WILBER NEBRASKA AND ADDRESSED TO THE HONORABLE JUDGE GERRARD, c/o CLERK OF THE UNITED STATES DISTRICT COURT, 100 CENTENNIAL MALL, SUITE 587 FEDERAL BUILDING, LINCOLN, NEBRASKA 68508 PER FEDERAL RULES IS DEEMED FILED TODAY DECEMBER 25, 2017.

UNDER DURESS WITHOUT PREJUDICE

[signature]

AMBASSADOR Michael Parsons
TSILHQOT'IN NATION - COUNTRY OF THE CHILCOTIN.
c/o SALINE COUNTY JAIL
911 SOUTH MAIN
WILBER ~~SALINE~~, NEBRASKA 68465



# Ambassador Michael Parsons, ACJ (USCT)
# Tsilhqot'in Nation, Country of the Chilcotin
# Bio

I have a Mechanical Degree from Southwest College, I was a Special Missions Pilot and Officer in the United States Air Force Civil Air Patrol, a former Special Deputy with the Shelby County Tennessee Sheriff, a former Manager with Federal Express over ~~Aircraft and Trucking operations in East~~ Tennessee, an Adjunct Faculty Member at Southwest College, Licensed General Contractor, Licensed Building Inspector and a Radio Talk Show Host on The Voice of Truth with Mike Parsons.

The Voice of Truth is radio ministry dedicated to exposing corruption in government and restoring our Constitutionally recognized God given rights and teaching my fellow American how to be independent, self-sufficient and self-governing. As a man of faith, I was saved at 5, baptized at 8 and now as an Ordained Minister by the Native American Church of Nemenhah and recognized as a medicine man and traditional leader. My way is focused on practicing and promoting reliance on our Creator's ways of natural health care, living independent, self-governed and in harmony with all of God's creation.

I am a farmer and with my wife of 30 years, Mrs. Parsons and I raise organic hay, dairy goats, horses, rabbits, chickens and for 38 years I have raised wolves. I have worked to educate the public and dispel the false myths that wolves are dangerous to man and have provided wolves to autistic children and families seeking the world's best family companion animal.

Mrs. Parsons and I have raised our son in ministry and music and he has attained many successes in both including performances at Julliard Music Conservatory, a Music Minister and conductor for several churches and Orchestras. He has traveled the world playing music and now is the Director of Bands for the largest private Christian School in America.

In 2015 I was adopted into the Tsilhqot'in Nation as a full tribal member and appointed to the position of Associate Chief Justice for efforts with getting their children back from the Canadian government. Like the corporations posing as government here, Canada profits off the backs of the people including Native American children they kidnap for a $300,000 profit per child they use to balance their books.

On January 1, 2016, I was appointed Ambassador of the sovereign Tsilhqot'in Nation, Country of the Chilcotin, working to restore the native children kidnapped by the Canadian Child Ministries by creating a billion dollar timber deal that would provide jobs for all Chilcotin tribal members, as well as people from Tennessee involved in the production, harvesting and management of Tsilhqot'in timber resources. In the Summer of 2016, I was honored to serve notice of the new County of the Chilcotin upon the U.N., seeking peaceful relations with the people of the world.

Political Experience:

- 1994, Republican nominee for District 99 State Representative
- 2006, candidate for Tipton County Executive

SET BACK
↓



April 24, 2017

All Authorities of the United States of America

RE: Ambassador and Associate Chief Justice Michael Parsons

To Whomever it May Concern:

Ambassador and Associate Chief Justice Michael Parsons is a Tsilhqotin Tribal member and a member of the Chilcotin National Congress in the Country of Chilcotin (formerly British Columbia, Canada). Michael Parsons is not a US citizen.

Michael Parsons has diplomatic immunity based on the appointment to the position of Ambassador by Hereditary Grand Chief of the Tsilhqotin Nation, Country of Chilcotin, Stanley Stump, Sr. on January 01, 2016 and based on the Vienna Convention on Diplomatic Relations, Article 39, which states that upon appointment by the Country to the position of Ambassador, they are recognized and have diplomatic immunity.

Ambassador Michael Parsons has been exonerated of all prior convictions and charges from the United States, by the Universal Supreme Court of the Chilcotin which under the rules of reciprocity and the Constitution of the Chilcotin National Congress (www.universal supremecourt.org) must be upheld by the United States and abroad.

Therefore, based on all of the above, I, Hereditary Grand Chief Stanley Stump, Sr. request the immediate release of Ambassador Michael Parsons from detention, in accordance with the Vienna Covention on Diplomatic Relations.

Hereditary Grand Chief Stanley Stump, Sr.

Box 228, Highway 20, Alexis Creek, BC V0L 1A0 Phone/ : (250) 394-7042

12/20/2017 BROUGHT INTO COURT AGAINST MY WILL BY FORCE OF U.S. MARSHALS. WITH NO ADVANCE NOTICE I WAS ADVISED IT WAS A HEARING TO DETERMINE IF THEY WOULD FORCE ME TO SUBMIT TO TB TEST AND DETERMINE MY IDENTITY. ASSISTANT U.S. ATTORNEY JAN SHARP (A MAN) ASKED AN UNKNOWN U.S. MARSHAL TO READ CAPTIONS FROM THIS "USMS POLICY." I OBJECTED DUE TO FACT I HAD NO ADVANCE NOTICE OF HEARING NOR ACCESS TO THIS DOCUMENT. THEY IMPLY THIS POLICY APPLYS TO EVERYONE, HOWEVER, YOU WILL NOTICE IT IS SPECIFICALLY FOR "ACTIVE" TB WHEN PEOPLE ARE "SYMPTOMATIC". NOT ME! THIS IS JUST ANOTHER EXAMPLE OF THEIR LIES AND MANIPULATION EVEN UNDER OATH. I ASSERTED MY RIGHT NOT TO BE FORCED TO THEIR RELIGIOUS BELIEFS RECOGNIZED BY 42 USC 2000bb RELIGIOUS FREEDOMS ACT AND SCOTUS CASE UPHOLDING MY RIGHT.

United States Marshals Service POLICY DIRECTIVES

**PRISONER OPERATIONS**

## 9.6 PRISONER AIRBORNE PATHOGEN CONTROL

*(Airborne pathogens include but are not limited to Tuberculosis (TB) and Severe Acute Respiratory Syndrome (SARS)).*

A. **Proponent:** Office of the Director/Deputy Director (DD), as supported by the Prisoner Operations Division (POD), Office of Medical Operations (OMO), 202-307-9680.

B. **Purpose:** This policy ensures that United States Marshals Service (USMS) prisoners who have contagious airborne diseases are identified as soon as possible and isolated to prevent the spread of the disease.

C. **Authority:** Standards set by the Centers for Disease Control and Prevention (CDC), American Correctional Association (ACA), the National Commission on Correctional Health Care (NCCHC) and good medical practices established by the professional medical community. Authority to manage prisoner health care is provided by 18 U.S.C. § 4006, 18 U.S.C. § 4013, and 18 U.S.C. § 4086

NOT TRUE! ONLY FUNDING, NOT AUTHORIZED TO FORCE TB TEST, OR X-RAYS.

ONLY RELATES TO PAY → [18 U.S.C. § 4006]

ONLY RELATING TO FUNDING ↑ [18 U.S.C. § 4013]

ONLY RELATES TO USMS HOLDING PEOPLE UNDER AUTHORITY OF ENACTMENTS OF CONGRESS. DOES NOT AUTHORIZE TESTING FOR TB. ↑ [18 U.S.C. § 4086]

D. **Policy:**

1. USMS intake cellblock officers will be alert for any symptoms of active contagious TB and other airborne diseases exhibited by USMS prisoners. Symptoms may include persistent cough, coughing up blood, and fever.

2. A healthcare professional will test USMS prisoners for TB as soon as possible after arrival at the intake facility but no later than 14 calendar days after admission to the facility, unless documentation of a TB clearance within the past 12 months is available.

3. Prisoners who have been diagnosed with TB or who are suspected of having active contagious TB or other airborne diseases are not produced for court or transported (other than to a local medical facility) by USMS personnel until they have received a signed medical clearance by a healthcare professional.

4. USMS personnel responsible for transporting a prisoner suspected of having active contagious TB or other airborne diseases must wear an approved respirator/mask when they are sharing air space with that prisoner. The prisoner in question must wear a disposable surgical mask.

E. **Procedures:**

1. **USMS Intake Screening for Airborne Pathogens**

   a. **Observation:** The USMS intake cellblock officer screens USMS prisoners for active contagious TB and other airborne diseases through direct observation of any symptoms. The symptoms most closely associated with these diseases are persistent cough, coughing up blood, and fever.

PENGAD-Bayonne, N.J. GOVERNMENT EXHIBIT 1 12-20-17

      b. **Questioning:** The USMS intake cellblock officer will ask each prisoner if he or she has ever been diagnosed with or treated for TB. If the prisoner states that he or she is currently taking preventive drug therapy or drug treatment, it is imperative that this information be documented on a Form USM-130, *Prisoner Custody Alert Notice,* so medical evaluation may be completed. This information must be entered into the Prisoner Tracking System (PTS), TB clearance screen once validation is received from a health care professional. The Office of Interagency Medical Services (OIMS) must be promptly notified by the district to assist in planning appropriate continuation of drug therapy, as prescribed by a healthcare professional.

THIS IS FOR "ACTIVE" TB

c. **Protective Measures:** If any TB symptoms appear to be present in a prisoner, the USMS intake officer must immediately put on his/her approved respirator/mask and place the prisoner in respiratory isolation (place a disposable **surgical mask over the prisoner's mouth and nose).** Ideally, the prisoner is placed in a negative pressure isolation room, if one is available, or in a room separate from other prisoners and staff.

d. **TB Clearance:** Cellblock staff also look for a TB clearance documented on the Form USM-553, *Medical Summary of Federal Prisoner/Alien in Transit.* Results of TB testing are valid for 12 months unless symptoms of active respiratory disease are present. Acceptable TB clearance includes a negative Tuberculosis Skin Test (TST), also known as the Purified Protein Derivative (PPD) and Mantoux test, or a negative chest x-ray within the past 12 months signed by a healthcare professional. Refer to USMS Policy Directive 9.20, *Cellblock Operations*.

e. **Reporting Suspected TB or Other Airborne Pathogens:** When a USMS prisoner is suspected of or confirmed as having active contagious TB or other airborne diseases, the district is to immediately report the case to OIMS, phone: 202-307-9680; fax: 202-307-5029. After hours, contact the USMS Command Center to reach the Prisoner Medical Duty Officer.

2. **Cellblock Respiratory Isolation:**

a. Respiratory isolation can be achieved by placing a disposable surgical mask over the symptomatic prisoner's mouth and nose and ensuring that all staff who share breathing space with the prisoner wear their approved respirators/masks. USMS district management or designee is responsible for maintaining a supply of surgical masks for prisoners and approved respirators/masks for staff. Refer to the Respiratory Protection Program.

b. Whenever possible, the symptomatic prisoner is immediately isolated from other prisoners and staff, preferably in a separate room, but the mask(s) and respirators must still be used.

c. USMS district management or designee shall ensure that used surgical masks are disposed of in a red biohazard plastic bag according to local regulations. Red biohazard plastic bags cannot be disposed of with the regular trash. USMS staff will wear disposable gloves when handling used masks and will wash their hands thoroughly after disposal. Refer to USMS Policy Directive 9.20, *Cellblock Operations*, D.8. Health and Safety.

d. USMS district management or designee shall ensure that employees who have been exposed to prisoners with suspect or active TB complete the Form CA-2,

*Notice of Occupational Disease and Claim for Compensation.* Refer to Policy Directive 3.5, *Health Programs, Office of Workers' Compensation Programs (OWCP)*.

3. **Removal of USMS Prisoners with Potential TB or Airborne Diseases for Medical Evaluation:**

a. As soon as possible, the symptomatic prisoner must be transported to a medical facility for isolation and TB testing. During transport, the prisoner continues to wear a surgical mask, and all accompanying staff wear their respirators/masks. If possible, the windows are opened and fans should be used to increase airflow.

b. USMS intake staff will notify the receiving medical facility ahead of time that a possible TB or airborne disease case is being transported for admission.

c. The medical facility shall perform the necessary testing and medical evaluation to determine whether or not the prisoner has active disease(s). The prisoner will remain in the medical facility until a diagnosis is confirmed. If the prisoner does have active contagious disease(s), he or she will remain in the medical facility for appropriate treatment. Reference E.7, *Hospital Detail for Potential Contagious Airborne Diseases* within this policy.

RELATES TO "ACTIVE" DISEASE

4. **Routine TB Testing for USMS Prisoners in State and Local Detention Facilities:**

a. Per the *NCCHC Standards for Health Services in Jails (2008)* using the full population assessment approach, all prisoners shall receive an initial health assessment as soon as possible, but no later than 14 calendar days after admission to the facility. Initial health assessments include diagnostic tests for communicable diseases, such as TB, unless there is documentation from the health department indicating that such testing is not warranted. USMS district management or designee is responsible for ensuring that prisoners are tested for TB by a medical professional within 14 days of admission into USMS custody, unless they have documentation of TB clearance within the past 12 months.

b. TB testing (as defined in section E.10, *Guidelines for TB Testing and Documentation* within this policy) should be a routine part of prisoner processing in every detention facility. While the USMS cannot require Intergovernmental Agreement (IGA) detention facilities to perform TB tests on prisoners, the USMS strongly encourages state and local detention facilities to test all prisoners (state, local, and federal) for TB.

USMS CANNOT REQUIRE *

c. If a local detention facility housing USMS prisoners is unwilling or unable to do TB testing, the district will encourage the detention facility to work with the local health department to develop a testing plan that meets the latest NCCHC and CDC guidelines. If the health department cannot solve the problem, the district will notify OIMS for additional medical assistance as soon as possible. If a district experiences any problems obtaining TB testing in a particular detention facility, district management will also contact POD for assistance with IGA negotiations.

RELATES TO "ACTIVE" TB

5. **Prisoner Refusal of TB Testing and/or Medical Treatment for Active TB:** If a prisoner refuses to be tested for TB or to receive appropriate medical treatment for active TB, the district will take the following actions:

FOR "ACTIVE" TB

a. Attempt to isolate the prisoner until he or she agrees to testing and/or treatment for suspected or active TB. If a prisoner is symptomatic or suspected of having active TB, the prisoner should be placed in a negative pressure isolation room, if available;

b. Offer the prisoner counseling by the detention facility medical staff (when available);

c. Offer the prisoner the alternative of a chest x-ray if the prisoner still refuses PPD testing;

d. Contact OIMS for guidance; and/or

COURT ORDER IS "ONLY" IF SYMPTOMATIC!

Request a federal court order to require testing if prisoner is symptomatic or there is a reasonable cause to suspect active contagious disease(s). A sample court order is available from OIMS.

6. **Notifications:**

a. When the USMS district management or designee learns that a prisoner in custody has been diagnosed by a health care professional as having active TB or some other contagious airborne disease(s), the USMS district management or designee will immediately inform the following individuals that the prisoner's current medical condition precludes transport or production without the express consent of the trial judge or magistrate and a health care professional:

1) OIMS at 202-307-9680; fax: 202-307-5029. After hours, contact the USMS Command Center to contact the Prisoner Medical Duty Officer;

2) The Court;

3) The Assistant United States Attorney assigned to the case; and

4) The defense attorney.

b. Release of any further information regarding the prisoner's medical condition outside the USMS is accomplished through the court.

c. USMS district management or designee will notify the Pre-trial Services Agency or the United States Probation Office of prisoners who test positive for active TB or other airborne diseases and are released on bond, so that they can be tracked for medical treatment by appropriate local authorities pursuant to a court order as a condition of release. OIMS is available to assist.

7. **Hospital Detail for Potential Contagious Airborne Diseases:**

a. All USMS personnel and hospital guards who share breathing space with a prisoner who has active contagious TB or other contagious airborne disease(s) (i.e., during transport to the hospital) must wear their approved respirator/masks. The contagious prisoner must wear a surgical mask over his/her mouth and nose while sharing breathing space with USMS personnel.

b. After admission to the hospital, the contagious prisoner must have further testing to determine the extent of the disease. The hospital medical staff will keep the prisoner in respiratory isolation and begin treatment. If a prisoner is treated for TB, it is absolutely crucial that treatment continue for the full course prescribed

(usually 6 months) in order to prevent the development of drug-resistant organisms.

c. If the prisoner is released from the hospital during treatment, upon discharge, USMS staff must ensure that the appropriate prescriptions and/or medications and discharge orders accompany the prisoner to the detention facility.

8. **Medical Clearance Requests for Justice Prisoner and Alien Transportation System (JPATS):**

   a. Form USM-106, *Request for Prisoner Movement*: JPATS scheduling does not process a form USM-106 unless the medically cleared line is marked, which indicates the prisoner has been TB cleared and medically cleared for transportation. Any medical complication or issue which could create an in-transit movement problem/delay must be noted in the *Special Remarks* section so that these concerns can be addressed prior to movement.

   b. Form USM-553, *Medical Summary of Federal Prisoner/Alien in Transit*: Must be completed by a healthcare professional and provided to the deputy or contract guard in charge of the trip for all prisoners who are moved. The deputy or contract guard in charge of the trip is responsible for ensuring that a completed Form USM-553 accompanies all prisoners who are moved.

   c. USMS Prisoners with Deadlines: Prisoners under a court-ordered deadline should have documentation of a TB clearance done within the past 12 months. For any questions, the district should call JPATS, Medical Transport Coordinator, 816-467-1973.

   d. Co-op and Military Prisoners: Co-op and military prisoners traveling on JPATS flights must have a documented TB clearance done within the past 12 months.

9. **Payment for USMS Prisoner TB Program Costs:**

   a. Intergovernmental Agreements: IGA facilities will, whenever possible, include TB testing in the calculated per diem rate. If the existing cost data includes TB testing, there is no added cost for this testing to the federal government.

   b. Outside Prisoner Medical Care: All outside prisoner medical care costs generated by TB testing of USMS prisoners are to be charged to the Federal Prisoner Detention (FPD) appropriation as outside medical costs. The USMS pays only those costs for testing and treatment of USMS prisoners.

10. **Guidelines for TB Testing and Documentation:**

    a. **Documentation – Roles and Responsibilities of Staff:**

       1) Form USM-553:

          a) USMS Intake Officer: The prisoner identification section of Form USM-553 (*Name* through *Date in Custody*) is completed by the USMS intake officer. The form is transferred with the prisoner to the detention facility and given to the detention facility medical staff for retention. If the detention facility has no medical staff, TB testing and medical clearances are accomplished by another resource.

      b) Health Care Professional: Documents, signs, and dates the USMS prisoner's TB test results in the *TB Clearance* section in the upper left corner of Form USM-553. TB clearance is good for one (1) year. The healthcare professional will also complete the *Current Medical Problems*, *Medication Required*, and *Special Needs* sections. This information is used by the district staff to complete the *Special Remarks* section of form USM-106, *Request for Prisoner Trip*.

c) District Management or Designee: Ensures completion of Form USM-553 and that TB test results will be documented by the district in the PTS TB Clearance Screen within one month of testing. Test results must also include the date the tests were administered, TB clearance ("Y" or "N" to be entered into the PTS TB Clearance Screen) in order to verify that the TB clearance is still valid. For more details, reference the TB Clearance Procedure listed under Archived PTS Information on the POD web site.

2) Distribution: After all sections of Form USM-553 have been completed, the original is provided to the deputy-in-charge or contract guard of the prisoner trip. The deputy provides the Form USM-553 to the flight nurse if the prisoner is to be transported on a JPATS aircraft, to the bus lieutenant if the prisoner is to be boarded on a Federal Bureau of Prisons (BOP) bus, or to the appropriate person at an institution or detention facility. A copy of the form is kept by the district in the prisoner file and a copy retained by the medical staff at the detention facility or by the attending physician.

b. **TB Test Information and Results:**

1) TST, PPD or Mantoux test: This test should be administered to every prisoner upon admission unless he or she has had this test within the past 12 months or has tested positive in the past. The PPD is injected under the skin, and the resulting reaction must be read 48 to 72 hours later. This test is done by a health care professional in accordance with the latest CDC standards.

a) If the PPD is negative, and the prisoner is not exhibiting symptoms of active contagious TB, the prisoner can be housed or moved as necessary.

b) If the PPD is negative, but the prisoner is exhibiting symptoms of active contagious TB, the prisoner must be taken to a hospital or other appropriate medical center immediately for further testing.

c) If the PPD is positive, a chest x-ray must be done as soon as possible to rule out active contagious TB.

2) Chest X-ray: If a prisoner is known to be or reports being pregnant, a healthcare professional is notified as soon as possible before an x-ray is done.

a) If the chest x-ray is negative, the prisoner can be housed or moved as necessary.

      b) If the chest x-ray is positive, the prisoner will require further testing.

**Table 1. USMS TB Clearance Requirements Summary**

| USMS TB Clearance Status | PPD Test Results | Symptoms of TB | Chest X-Ray Results |
|---|---|---|---|
| Cleared | Negative | No | Not Applicable |
| Cleared | Positive | No | Negative |
| Not Cleared | Negative | Yes | Positive or Pending* |
| Not Cleared | Positive | No | Positive or Pending* |
| Not Cleared | Positive | Yes | Positive or Pending* |

* Must have a chest x-ray report that states no TB findings to receive a TB clearance. Contact OIMS at 202-307-9680 for further assistance.

3) Requirements for Prisoners Housed in BOP:

a) BOP facilities must perform TB testing on all prisoners (including USMS prisoners) at intake if there is no documented TB clearance;

b) BOP facilities are prohibited from releasing any prisoner to another BOP facility without a documented TB clearance. However, a USMS prisoner traveling with a deadline to a state or local detention facility can be released from a BOP facility prior to completion of TB clearance; and

c) USMS prisoners who do not have a documented TB clearance and are to be transferred to other BOP facilities may be subject to delays en route.

**F. Definitions:**

1. **Tuberculosis (TB):** TB is an infection caused by exposure to mycobacterium tuberculosis; latent TB infection can progress to disease. TB infection and TB disease make up the two dimensions of TB.

a. **Latent TB Infection:** A person with latent TB:

1) May feel healthy;

2) May have no signs of illness (active contagious disease);

3) Tests positive on either TST, PPD or Mantoux test;

4) Is not contagious (cannot infect others); and/or

5) Is at risk for developing active contagious TB disease in the future (especially if the person's immune system is compromised by other diseases such as the Human Immunodeficiency Virus infection (HIV infection), diabetes, and/or cancer).

b. **Active Contagious TB Disease:** A person with active contagious TB:

        1) May or may not feel ill;

2) May or may not display signs and symptoms of disease (fever, chills, night sweats, coughing up blood, weight loss);

3) Usually tests positive on either TST, PPD or Mantoux test; and/or

4) Is contagious (can infect others) and can spread infection by such simple actions as coughing and sneezing.

2. **TB Skin Test (TST):** A standard test used to identify latent or active contagious TB which is known as the PPD or Mantoux test.

3. **TB Clearance:** A determination made by a medical care provider that a prisoner has no signs or symptoms of active contagious TB and has either a negative result for TST, PPD or Mantoux test or a negative chest x-ray within the past 12 months.

4. **Multiple Drug-resistant TB (MDR TB):** Several strains of mycobacterium tuberculosis (the bacteria that cause tuberculosis) have developed resistance to the medications used to treat the disease. As a result, some people with active contagious tuberculosis cannot be treated with conventional medications. These drug-resistant strains of bacteria pose a great risk to the public health of this nation and others. Bacteria develop resistance when treatment is started but not completed. This is why courses of drug treatment must always be completed.

5. **Approved Respirator:** Respirators classified by the National Institute for Occupational Safety and Health (NIOSH) as type 100, 99, or 95 are acceptable for worker protection against exposure to TB.

6. **Airborne Pathogens:** Infectious agents (usually bacterial or viral) that are carried by or through the air usually in small droplets (i.e., TB, SARS).

**G. Cancellation Clause:** Supersedes Policy Directive 9.4, *Prisoner Health,* regarding the section on *Prisoner Airborne Pathogen Control.* (This section has been moved from under Policy Directive 9.4 to Policy Directive 9.6.)

**H. Authorization and Date of Approval:**

**By Order of:** **Effective Date:**

/S/ 7/28/10

John F. Clark
Director
U.S. Marshals Service

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL WAYNE PARSONS,<br><br>Defendant. | **4:17CR3038**<br><br>**ORDER** |

The government has moved for an order compelling defendant to submit to testing for tuberculosis testing. (Filing No. 13). A hearing was held on the issue.

US MARSHALS SERVICE POLICY 9.6 PRISONER AIRBORNE PATHOGEN CONTROL ONLY PERTAINS TO "ACTIVE TB" WHEN SYMPTOMATIC, CONGRESS HAS GIVEN NO AUTHORITY TO COURTS TO ENFORCE ANYTHING OUTSIDE OF LAW, USMS POLICY IS NOT LAW. THE US MARSHAL TESTIFING LIED TO COURT IMPLYING POLICY 9.6 PERTAINS TO EVERYONE, IT'S ONLY FOR ACTIVE TB CASES.

To preserve the health and welfare of inmates, detainees, and prison staff, the federal Marshal's policy requires all persons held in custody to submit to tuberculosis testing. This policy is consistent with Eighth Circuit law. See, DeGidio v. Pung, 920 F.2d 525, 527-28 (8th Cir.1990). Although Plaintiff claims he has a right to refuse such testing on religious grounds, (see Religious Freedom Restoration Act of 1993, 42 U.S.C.A. § 2000bb et. seq.), even assuming Defendant has shown that tuberculosis testing will interfere with Defendant's sincerely held religious beliefs, the court must balance Defendant's religious beliefs against the government's compelling interest is thwarting the outbreak and spread of a highly dangerous and potentially lethal infection among the inmate and detainee population and the staff tasked with guarding and providing services to that population.

THIS CASE PRE-DATES RFRA 1993

THE STANDARD SET BY SCOTUS IN THE MYERS CASE DOES NOT ALLOW THIS ONE SIZE FITS ALL APROACH. I HAVE MET THE MYERS 3 POINT STANDARD THAT EVEN THE U.S. ATTORNEY PRESENTED AS THE CONTROLING STANDARD.

THERE IS NO LAW REQUIRING TB TESTING.

After considering the evidence presented and the applicable law, (see Turner v. Safley, 482 U.S. 78, 84 (1987); Washington v. Harper, 494 U.S. 210 (1990); Benjamin v. Hobbs, 2012 WL 3985940 (E.D.Ark. 2012) (citing and relying

THIS CASE PRE-DATES RFRA

ONLY APPLIES TO PRISON INMATES WITH ACTIVE MENTAL ILLNESS OR ACTIVE DISEAS

THESE CASES PRE-DATE THE MYERS CASE THAT SCOTUS SET AS THE STANDARD FOR RFRA

upon Eighth Circuit law); Rhinehart v. Gomez, 1995 WL 364339, *3-*4 (N.D.Cal.1995); Karolis v. New Jersey Dept. of Corrections, 935 F.Supp. 523, 527-28 (D.N.J.1996) (holding involuntary administration of tuberculosis test did not violate the Religious Freedom Restoration Act because there is a compelling state interest in stopping the spread of tuberculosis).

IT IS ORDERED:

1) The government's motion to compel, (Filing No. 13), is granted.

2) Defendant is subject to involuntary tuberculosis testing.

3) Defendant is given until December 27, 2017 to decide whether such testing will be by subcutaneous injection or by chest x-ray. If Defendant does not timely do so, the Marshal is permitted to decide what means of testing will be administered, and it shall thereafter promptly administer the testing.

4) Until the tuberculosis testing results are available, the Marshal is permitted to house Defendant in segregation.

December 21, 2017.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge



RE: TB testing research
Sharp, Jan (USANE)
to:
Cheryl_Zwart@ned.uscourts.gov, John_Vanderslice@fd.org
12/18/2017 04:44 PM
Hide Details
From: "Sharp, Jan (USANE)" <Jan.Sharp@usdoj.gov>
To: "Cheryl_Zwart@ned.uscourts.gov" <Cheryl_Zwart@ned.uscourts.gov>, "John_Vanderslice@fd.org" <John_Vanderslice@fd.org>

Thank you Judge. I will review this before our hearing on Wednesday.

THIS WOULD INDICATE THE JUDGE IS DOING HEARING PREPERATION FOR PLAINTIFFS ATTORNEY. AS WAS THE CASE ON 12/18 AND 12/20 ZWART IS NOT ACTING AS JUDGE BUT ADVOCATE FOR PROSECUTOR OBVIOUSLY THIS EMAIL WAS PUT INTO MY STACK BY MISTAKE.

**From:** Cheryl_Zwart@ned.uscourts.gov [mailto:Cheryl_Zwart@ned.uscourts.gov]
**Sent:** Monday, December 18, 2017 4:36 PM
**To:** Sharp, Jan (USANE) <JSharp@usa.doj.gov>; John_Vanderslice@fd.org
**Subject:** TB testing research

Counsel:

I did not do a deep dive on this, but here is what I found:

Darby v. Schuetzle, No. 1:09-CV-004, 2009 WL 700631, at *5 (D.N.D. Mar. 13, 2009)

I AM NOT A PRISONER IN A PRISON. I AM A PRE-TRIAL DETAINEE

I AM NOT A PRISONER

"Although prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights in light of the needs of the penal system." Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 982 (8th Cir.2004). "Constitutional claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population are evaluated under a lesser standard of scrutiny in the context of a prison setting." Id. (citing Turner v. Safley, 482 U.S. 78, 84 (1987)). "A prison regulation or action is valid, therefore, even if it restricts a prisoner's constitutional rights if it is 'reasonably related to legitimate penological interests.' " Id. (quoting Turner v. Safley, 482 U.S. 78, 89)). When determining the reasonableness of the regulation at issue, courts consider the following four factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) how the accommodation of the asserted constitutional right will affect guards, other inmates, and the allocation of prison resources; and (4) whether there are alternatives that fully accommodates the prisoner "at de minimis cost to valid penological interests." Turner v. Safley, 482 U.S. at 89–91).

PRE-DATES RFRA OF 1993

Washington v. Harper, 494 U.S. 210, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990)

Prison policy authorizing treatment of nonconsenting mentally ill prisoner with antipsychotic drugs comported with requirements of substantive due process and did not unduly infringe upon prisoner's liberty interest in avoiding unwanted treatment, notwithstanding contention that alternatives to forced treatment existed, e.g., state could find prisoner incompetent and obtain court approval of treatment or could make use of physical restraints; regulation applied only to prisoners who were mentally ill and who, as result of their illness, were gravely disabled or represented significant danger to themselves or others, drugs could be administered for no purpose other than treatment and only under direction of licensed psychiatrist, and alternatives suggested by prisoner would not effectively respond to state's legitimate interests.

Benjamin v. Hobbs, 2012 WL 3985940 (E.D.Ark.), 2 (E.D.Ark.,2012):

The Eighth Circuit has recognized that prison officials must test prisoners for TB and take adequate measures to prevent that disease from spreading. DeGidio v. Pung, 920 F.2d 525, 527–28 (8th Cir.1990). Thus, prison officials do not violate prisoners' constitutional rights by involuntarily testing or treating them for TB. See Lee v.

Armontrout, 991 F.2d 487, 489 (8th Cir.1993) (finding no Eighth Amendment violation where prisoner officials involuntarily tested and treated a prisoner for TB); McCormick v. Stalder, 105 F.3d 1059, 1061–62 (5th Cir.1997) (finding no Eighth Amendment or Fourteenth Amendment violation where prison officials involuntarily treated a prisoner for TB). Thus, Defendants did not violate Plaintiff's constitutional rights when they involuntarily tested him for TB.

Mack v. Campbell, 948 F.2d 1289, 1991 WL 243569 (6th Cir.1991) (administrative segregation for refusing tuberculosis screening test does not violate due process); I AM NOT SYMPTOMATIC, IN ADMIN. SEG SINCE 9/22/2017

Rhinehart v. Gomez, 1995 WL 364339, *3–*4 (N.D.Cal.1995) (Washington v. Harper justifies prison policy of involuntary testing and treatment for tuberculosis).

Karolis v. New Jersey Dept. of Corrections, 935 F.Supp. 523, 527–28 (D.N.J.1996) (involuntary administration of tuberculosis test to prisoner upheld against challenge under Religious Freedom Restoration Act because there is a compelling state interest in stopping the spread of tuberculosis).

IT APPEARS THAT THE JUDGE IS ACTING AS PROSECUTOR. SHE IS DOING ALL THE WORK TRYING TO SUPPORT HER PREDETERMINED POSITION.

Saline County Jail
*Inmate Mail Uncensored*
From ~~Inmate~~: AMBASSADOR Michael Parsons
P.O. Box 911
Wilber, NE 68465

LEGAL MAIL
12/25/2017

FOREVER
USA

RECEIVED

DEC 29 2017

JOHN M. GERRARD
U.S. District Judge

HONORABLE JUDGE JOHN GERRARD
C/O CLERK OF THE UNITED STATES DISTRICT COURT
100 CENTENNIAL MALL, FEDERAL BUILDING SUITE 587
LINCOLN, NEBRASKA 68508

LEGAL MAIL