IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | 4:17CR3038 |
| vs. | |
| MICHAEL WAYNE PARSONS, | ORDER |
| Defendant. | |

During today's hearing, and based on Defendant's explanation of his financial circumstances, I found Defendant is unable to afford counsel and is eligible for appointed counsel. I asked Defendant if he wants appointed counsel. He would not state whether he wants appointed counsel without first being told the "form" of this court.

Attached is an explanation of the Jurisdiction of this court, specifically as it applies to Criminal cases.

If after reading this information, Defendant wishes to have appointed counsel, he need only make that request in writing.

Dated this 9th day of February, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge



Home | History of the Federal Judiciary | Courts

# Jurisdiction of the Federal Courts

The jurisdiction of the federal courts has been defined by the Constitution, congressional statutes, and decisions of the Supreme Court of the United States. Article III provides that the judicial power "shall extend" to nine types of "cases" and "controversies": all cases in law and equity arising under the Constitution, laws, and treaties of the United States; all cases affecting ambassadors, other public ministers and consuls; all cases of admiralty and maritime jurisdiction; controversies to which the United States is a party; controversies between two or more states; controversies between a state and citizens of another state; controversies between citizens of different states; controversies between citizens of the same state claiming lands under grants of different states; and controversies between a state or its citizens and foreign states, citizens, or subjects. The Constitution grants the Supreme Court original jurisdiction over cases affecting ambassadors and public ministers and cases in which a state is a party, leaving the remainder of cases within the judicial power to the Court's appellate jurisdiction, with "such exceptions, and under such regulations as the Congress shall make."

Article III of the Constitution left for the Congress to determine the distribution of federal jurisdiction within a system of federal courts and between the federal and state courts. The Judiciary Act of 1789 provided for cases to enter a federal court through an original filing, through removal of a case originally filed in state court, and through an appeal from the highest court of a state to the Supreme Court of the United States. Over the past two centuries, Congress has passed numerous statutes redefining the jurisdiction of the federal courts within the limits set by the Constitution. Throughout its history, the Supreme Court in its decisions has established additional rules and doctrines governing federal court jurisdiction.

 Share this page

Thurgood Marshall Federal Judiciary Building
One Columbus Circle NE
Washington DC 20002-8003
202-502-4000

Supreme Court of the United States  USCourts.gov  U.S. Sentencing Commission  Federal Judicial Center Foundation

The Federal Judicial Center produced and maintains this site in furtherance of its statutory mission. The Center regards the contents of this site to be responsible and valuable, but these contents do not reflect official policy or recommendation of the Board of the Federal Judicial Center. The site also contains links to relevant information on websites maintained by other organizations; providing these external links is for the convenience of this site's users and does not constitute verification or endorsement of the information or the sites to which the links are produced. Opinions expressed in the materials found on this site are those of the authors, and not necessarily those of the Federal Judicial Center.

Site Map | Contact Webmaster  | Privacy and Security Notice



Home

# Jurisdiction: Criminal

The federal courts have operated as tribunals for the prosecution of crimes defined by federal law and the Constitution. The role of the federal courts as criminal courts grew as the federal government assumed greater responsibility for regulating the nation's social and economic life and as the federal government established federal penalties for crimes traditionally prosecuted in state courts.

Article III of the Constitution extends the federal judicial power to all cases "arising under" the laws, Constitution, and treaties of the United States. In the Judiciary Act of 1789, Congress granted the federal trial courts jurisdiction over "all crimes and offences that shall be cognizable under the authority of the United States." The circuit courts had jurisdiction over all federal crimes, while the district courts shared with the circuit courts jurisdiction over minor crimes, defined as those "where no other punishment than whipping, not exceeding thirty stripes, a fine not exceeding one hundred dollars, or a term of imprisonment not exceeding six months, is to be inflicted." Federal jurisdiction extended to crimes committed on the high seas. The jurisdiction of the circuit courts was to be exclusive of the states "unless where the laws of the United States otherwise direct." The 1789 Act did not provide for any appeals of criminal cases in the district or circuit courts.

In the 1790s and early 1800s, most of the criminal prosecutions in the federal courts were for crimes specified by congressional statutes, such as the Crime Act of 1790, which focused on enforcing federal government authority in areas like commerce, foreign affairs, and collection of revenue. The largest number of criminal cases in circuit courts arose from charges of piracy, assault, and other crimes on the high seas. Other prosecutions were brought under the Post Office Act of 1792, which prohibited interference with the mails, and under the Neutrality Act of 1794, which prohibited anyone in United States territory from supplying and outfitting ships for military expeditions against countries not at war with the United States. Criminal prosecutions were a small portion of

circuit and district court business in the 1790s, totaling only 426 cases between 1789 and 1801. The greatest number of cases arose in Pennsylvania in response to the 1794 Whiskey Rebellion, including 35 indictments for treason, and the 1799 Fries' Rebellion. Enforcement of the Sedition Act of 1798, which made it a federal crime to conspire to oppose the laws or operations of the government or to criticize in writing the Congress or the president, led to a small number of highly publicized trials. Between 1801 and 1829, there were over 2,700 indictments in circuit courts. Maritime crimes continued to be the largest portion of cases, about one-third of the total, with prosecutions for counterfeiting, forgery, and violations of the revenue laws producing about 500 cases. The district courts heard approximately 650 misdemeanor crimes as well.

District attorneys also sought indictments in the 1790s for crimes defined under the common law. Many district judges and Supreme Court justices sitting in circuit courts assumed that the courts had jurisdiction over common-law crimes, such as bribery of federal officers, based on the federal government's inherent power under the law of nations. Justice Samuel Chase, sitting as circuit justice in the 1798 case of *United States v. Worrall* , denied that the federal courts had jurisdiction over common-law crimes, but some district attorneys continued to seek, and in some cases obtain, indictments for common-law crimes in U.S. circuit courts into the 1800s.

The Supreme Court ruled in the 1812 case of *United States v. Hudson and Goodwin* that the federal courts did not possess jurisdiction over crimes defined solely by the common law. In 1816, the Supreme Court also ruled that federal courts did not have jurisdiction over non-statutory crimes under admiralty jurisdiction. Congress passed new statutes throughout the nineteenth century adding to and more precisely defining particular federal crimes.

Although the Judiciary Act of 1789 stated that general federal criminal jurisdiction was to be exclusive of the state courts, Congress allowed, and sometimes mandated, state courts to enforce particular federal criminal statutes. In the early nineteenth century, however, a number of state courts ruled that such concurrent jurisdiction was an unconstitutional infringement of the sovereignty of the states. Justice Joseph Story expressed support for this principle, stating in his opinion in *Martin v. Hunter's Lessee* in 1816 that "no part of the criminal jurisdiction of the United States can, consistently with the Constitution, be delegated to State tribunals." In *Prigg v. Pennsylvania* , an 1842 case involving enforcement of the Fugitive Slave Act, the Supreme Court qualified this position by holding that states could not be obligated to enforce federal law, but could do so if no state law prohibited it. That same year, Congress granted the district courts concurrent jurisdiction over all noncapital crimes and expanded the authority of U.S. commissioners to arrest, imprison, and bail criminal defendants.

Criminal cases became a larger portion of federal court caseloads after the Civil War. Congress granted federal courts exclusive jurisdiction over prosecutions for violations of the Civil Rights Acts and Enforcement Acts passed between 1866 and 1875 to protect the civil and voting rights of freed African Americans. Congress in the Revised Statutes of 1875 made jurisdiction over all federal criminal laws exclusive to federal courts. District attorneys brought hundreds of prosecutions under the Enforcement Acts in the early 1870s in southern federal courts, though these cases dwindled in number over the next few decades.

In the late nineteenth and early twentieth centuries, the majority of criminal cases in federal court arose under laws passed to protect federal interests and property. The largest portion of federal criminal prosecutions, numbering between 4,000 and 8,000 per year, were for violations of the revenue laws, especially failure to pay excise taxes on liquor. The government also prosecuted hundreds of cases under the customs, land, and immigration laws.

The increase of criminal prosecutions in federal court in the late nineteenth century heightened criticism of the failure to provide for appeals of criminal convictions in the district or circuit courts. In 1879, Congress granted the circuit courts appellate jurisdiction over criminal cases in district courts where the sentence was imprisonment or a fine of over $300. An 1889 statute authorized appeals from the circuit courts to the Supreme Court in capital cases, and the 1891 act that established the circuit courts of appeals expanded the right of appeal to the Supreme Court to all cases of "infamous crimes." As interpreted by the Supreme Court, "infamous crimes" included all those where a penalty of imprisonment was possible. Congress in 1897 transferred appellate jurisdiction for noncapital crimes to the circuit courts of appeals and in 1911 ended direct appeal to the Supreme Court in capital cases.

In the early twentieth century, criminal dockets grew as Congress used its power under the Commerce Clause to establish new federal crimes. The number of prosecutions under the postal fraud law, passed in 1872, increased to over 2,000 per year by the 1910s, making postal fraud cases the second most common criminal cases in federal courts behind revenue cases. Prosecutions under the 1906 Food and Drug Act and laws regulating railroad rates, safety, and labor conditions grew in frequency as well. The political furor over "white slavery" led to passage in 1910 of the Mann Act, which made it a federal crime to transport a woman across state lines for "immoral purposes" and produced hundreds of new criminal cases per year. In 1914, Congress passed the Harrison Narcotics Act, which resulted in over 4,000 cases per year by the 1920s. In 1919, Congress passed the Dyer Motor Vehicle Theft Act, which made it a federal crime to transport a stolen vehicle across state lines. The courts received up to 5,000 auto theft cases per year under the Dyer Act into the

1960s, with enforcement dropping only after the 1970s.

The federal courts entered a new era in criminal enforcement in the 1920s during America's experiment with the prohibition of alcohol. The 1919 Volstead Act granted state courts concurrent jurisdiction over suits to enjoin activity prohibited by the statute, but prosecutions for criminal penalties under the Act were exclusive to federal court. The number of criminal cases in federal courts rose dramatically during Prohibition, from around 17,000 in 1917 to 76,000 in 1925 and to a peak of 92,000 in 1932. The overwhelming proportion of these cases were prosecutions under the prohibition laws, with 50,000 liquor cases in 1925 and almost 66,000 in 1932. The year after prohibition was repealed, the number of criminal cases filed dropped to 35,000.

In the mid-twentieth century, prosecutions under statutes adopted to protect federal property and interests continued to be an important source of district court business. During World War II, over twenty percent of district court criminal cases arose from violation of the federal Selective Service Act and wartime price controls and rationing. Prosecutions for larceny of federal government property, defrauding of federal agencies, and violations of immigration laws accounted for thousands of cases each year.

The nature of criminal cases in the federal courts changed in the second half of the twentieth century as Congress expanded its authority under the Commerce Clause to establish federal penalties for what traditionally had been subjects of local and state law enforcement. Beginning in the 1930s, Congress targeted criminal organizations, which had emerged during Prohibition, with statutes that made crimes such as murder, kidnapping, theft, bank robbery, extortion, and possession of illegal firearms federal crimes if commission of them involved crossing state lines or the use of facilities of interstate commerce. Between the 1960s and 1990s, Congress passed laws establishing federal jurisdiction over crimes that "affected" interstate commerce, no matter how indirectly, in such areas as civil rights, drugs, gambling, loan sharking, sexual abuse, and violence against minority groups. In the 1995 case of *United States v. Lopez* , the Supreme Court declared unconstitutional a statute that created federal criminal penalties for carrying a gun within a certain distance of a school. The *Lopez* decision suggested that there were limits to the activities that Congress could criminalize based on its authority under the Commerce Clause, but the ruling has not affected enforcement of most federal criminal laws.

The "federalization of crime" led to a rapid growth in criminal caseloads in the late twentieth century. The number of federal criminal cases grew rapidly in the 1960s, from around 30,000 in 1960 to a peak of almost 50,000 in 1972. Prosecutions fell to their early 1960s low by 1980, but then began a steady climb over the next decade. Criminal caseloads grew by 70 percent between

1980 and 1992. The area of largest growth was in drugs and firearms offenses. The number of drug cases quadrupled during this period, from 3,130 to 12,833. Firearms cases quadrupled also, from 931 prosecutions in 1980 to 3,917 in 1992. The districts with the greatest number of criminal cases were border districts like Southern and Western Texas, Southern California, Arizona, and Southern Florida, where arrests for drug and immigration offenses dwarfed the totals in other districts. In the first decade of the twenty-first century, drug offenses fell gradually from a high of 19,000 in 2002, but continued to be a large source of court caseloads, totaling over 15,000 in 2010. Immigration violations have been the largest source of criminal caseload growth, rising from 16,000 cases in 2006 to 28,000 in 2010.

Further Reading:

Dwight F. Henderson, *Congress, Courts, and Criminals: The Development of Federal Criminal Law, 1801-1829* (Westport, CT: Greenwood Press, 1985).

Sara Sun Beale, "Federalizing Crime: Assessing the Impact on Federal Courts," *AAPSS* 543, (January 1996): 39-51.

Kathryn Preyer, "Jurisdiction to Punish: Federal Authority, Federalism and the Common Law of Crimes in the Early Republic," *Law and History Review* 4 (1986): 223-66.

Lawrence M. Friedman, *Crime and Punishment in American History* (New York: Basic Books, 1993).

Henry J. Friendly, *Federal Jurisdiction: A General View* (New York: Columbia University Press, 1973).

Administrative Office of the U.S. Courts, *Judicial Business of the U.S. Courts* , various years.

 Share this page

Thurgood Marshall Federal Judiciary Building
One Columbus Circle NE
Washington DC 20002-8003
202-502-4000

Supreme Court of the United States USCourts.gov U.S. Sentencing Commission Federal Judicial Center Foundation

The Federal Judicial Center produced and maintains this site in furtherance of its statutory mission. The Center regards the contents of this site to be responsible and valuable, but these contents do not reflect official policy or recommendation of the Board of the Federal Judicial Center. The site also contains links to relevant information on websites maintained by other organizations; providing these external links is for the convenience of this site's users and does not constitute verification or endorsement of the information or the sites to which the links are produced. Opinions expressed in the materials found on this site are those of the authors, and not necessarily those of the Federal Judicial Center.