PETITIONER

BY SPECIAL APPEARANCE ONLY

AMBASSADOR Michael Parsons OF THE SOVEREIGN TSILHQOT'IN NATIONS- COUNTRY OF THE CHILCOTIN, A LIVE MAN, UNDER DURESS, WITHOUT PREJUDICE

TO: U.S. DISTRICT COURT JUDGE JOHN GERRARD
c/o: THE CLERK OF THE U.S. DISTRICT COURT
100 CENTENNIAL MALL, SUITE 587 FEDERAL BUILDING
LINCOLN, NEBRASKA 68508

NOTICE

PETITIONER HEREBY GIVES NOTICE AS A MATTER OF RIGHT, HIS:

MOTION TO DISMISS FOR STATUTORY VAGUENESS

4:17 CR 3038

RECEIVED
MAY 29 2018
CLERK
U.S. DISTRICT COURT
LINCOLN

1.

## BACKGROUND

On April 19, 2017, an alleged federal grand jury allegedly returned an indictment charging an undisclosed all capital letter MICHAEL WAYNE PARSONS with one count of possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Prior to indictment on January 12, 2017, Petitioner was arrested in Arapaho Nebraska by the FBI on an un-related charge of failure to appear in a State of Tennessee court. Petitioner was held in Nebraska until March when he was transported to Tennessee absent an extradition hearing and a pending writ of habeas corpus in the U.S. District Court in Nebraska. On September 22, 2017 Petitioner was transferred to federal custody where he remains to date.

## ARGUMENT

The recent U.S. Supreme Court decision in Sessions v. Dimaya, 584 U.S. ___ (2018), held the following:

> The void-for-vagueness doctrine, as we have called it, guarantees that ordinary people have "fair notice" of the conduct a statute proscribes. Papachristou v. Jacksonville, 405 U.S. 156, 162 (1972). And the doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges. See Kolender v. Lawson, 461 U.S. 352, 357-358 (1983). In that sense, the doctrine is a corollary of the separation of powers—requiring that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not. Cf. id., at 358, n.7 ("If the legislture could set a net large enough to catch all possible offenders, and

leave it to the courts to step inside and say who could be rightfully detained, it would substitute the judicial for the legislative department" (internal quotation marks omitted)).

The U.S. Supreme Court has held both the Fifth Amendment Indictment Clause and the Sixth Amendment Notice Clause requires an indictment to "sufficiently apprise the defendant of what he must be prepared to meet." Russell v. United States, 369 U.S. 749, 763 (1962). To fairly apprise the accused of what he must be prepared to meet, criminal statutes must be reviewed for vagueness from the point of view of a "person of ordinary intelligence." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). That is because "vague laws may trap the innocent by not providing fair warning." Id. In Connally v. General Construction Co., 269 U.S. 385 (1926), the U.S. Supreme Court held that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Id. at 391. "Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another." Id. at 392. "It is established that a law fails to meet the requirements of the due process clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits...." Giaccio v. Pennsylvania, 382 U.S. 399, 402 (1966).

The indictment in the instant case reads as follows:

The Grand Jury charges:
On or about the 11th day of ~~February~~ January JWS/JT, 2017, in the District of Nebraska,

Michael Wayne Parsons,

having been convicted of a crime punishable by imprisonment for a term

3.

exceeding one year, to wit: aggravated assault on November 23, 2009, in the Circuit Court of Tipton County, Tennessee, did knowingly possess in and affecting interstate commerce a firearm and ammunition, that is, a Rock River 5.56 LAR-15 assault rifle, 637 rounds of ammunition (87 rounds of .223 ammunition further identified as light armor piercing ammunition and 550 rounds of .300 blackout ammunition), said firearm and ammunition having been shipped and transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(1).

18 U.S.C. § 922(g)(1) states in pertinent part:

"It shall be unlawful for any person... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." (emphasis added)

"In cases where the indictment tracks the words of the statute charging the offense, the indictment will be held sufficient so long as the words unambiguously set forth all elements necessary to constitute the offense." United States v. Davis, 336 F.3d 920, 922 (9th Cir 2003); see also United States v. Fitzgerald, 882 F.2d 397, 399 (9th Cir. 1989). The indictment does not track the words of the statute charging the offense. Additionally, the accused "has a right to be apprised of what overt act the government will try to prove at trial. See United States v. Resendiz-Ponce, 549 U.S. 102, 106 (2007). The indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." See United States v. Carll, 105 U.S. 611, 612 (1882) (emphasis added)

Here, the indictment, and the statute are both insufficient because they do not apprise

4.

A PERSON OF ORDINARY INTELLIGENCE SPECIFICALLY WHAT THE GOVERNMENT WILL TRY TO PROVE AT TRIAL. WILL THE GOVERNMENT TRY THE ACCUSED AT TRIAL IN THE PRESENT TENSE REGARDING THE INTERSTATE COMMERCE ELEMENT? HOWEVER, IT NOW APPEARS THAT THE GOVERNMENT WILL NOT TRY THE ACCUSED IN THE PRESENT TENSE, ACCORDING TO THE GOVERNMENT'S RECENT DISCOVERY DISCLOSURES. ADDITIONALLY, THE AVERAGE PERSON WHO IS CHARGED WITH THIS STATUTE COMMONLY ASK HIS OR HER LEGAL COUNSELOR QUESTIONS REGARDING THIS MATTER. QUESTIONS SUCH AS, "I DIDN'T HAVE ANYTHING TO DO WITH INTERSTATE COMMERCE, SO WHY AM I BEING CHARGED FOR THIS?" WHICH IS THE EXACT QUESTION PETITIONER ASKED THE ASSISTANT FEDERAL PUBLIC DEFENDER JOHN VANDERSLICE AND APPOINTED LEGAL COUNSELOR DON SCHENSE, BUT NEITHER COULD ANSWER THE QUESTION. IT WAS ALSO SAID, "I HAVE NEVER SHIPPED OR TRANSPORTED A FIREARM, SO WHY AM I CHARGED WITH THIS STATUTE?

ACCORDING TO MERRIAM-WEBSTER, THE OFFICIAL SCRABBLE PLAYERS DICTIONARY, FIFTH EDITION (2005), "HAS" IS DEFINED AS "A PRESENT 3d PERSON SINGULAR OF HAVE." Id.; "HAVING" IS DEFINED AS "PRESENT PARTICIPLE OF HAVE." Id.; AND "HAD" IS DEFINED AS "A PAST TENSE OF HAVE." Id.

THE WORD "HAS" AS OPPOSED TO THE WORD "HAD" WAS USED IN THE STATUTE. "HAS" IS THE THIRD PERSON SINGULAR, PRESENT INDICATIVE VERB, MEANING AN ACTION OR SITUATION THAT IS CURRENTLY ONGOING OR ACTIVE; WHERE "HAD" IS THE PAST TENSE PARTICIPLE OF THE VERB HAVE, MEANING IN A PREVIOUS ACTION OR SITUATION. SO IF ONE WERE CURRENTLY IN PROGRESS OF SHIPPING OR TRANSPORTING, OR IF ONE WAS THE DIRECT RECIPIENT THEN THE WORD "HAS" WOULD BE APPROPRIATE. HOWEVER, IF IT WERE EXPANSIVE, INTENDED TO INCLUDE ANY FIREARM PREVIOUSLY SHIPPED OR TRANSPORTED IN INTERSTATE COMMERCE, THEN "HAD" WOULD BE THE PROPER VERB. THE USE OF "HAD" WOULD HAVE MEANT TO INCLUDE ANY AND ALL THAT "HAD" BEEN SHIPPED OR TRANSPORTED ANY TIME PRIOR.

THEREBY, PETITIONER CHALLENGES THE GOVERNMENT TO PROVIDE A HYPOTHETICAL SCENARIO WHERE THE TERM "HAS BEEN" WOULD ONLY APPLY TO THE PAST, WITH NO POSSIBILITY OF APPLYING IT TO

the present. It simply cannot be done.

Likewise, the phrase "having been shipped" was used in the indictment, in which "having" is the present tense participle of have. Id. But an indictment is constitutional sufficient only if it clearly informs the accused of the precise offense of which he is accused so that he may prepare his defense and so that a judgment thereon will safeguard him from a subsequent prosecution for the same offense. See 1 Charles Alan Wright & Arthur Miller, Federal Practice & Procedure Criminal § 125 (3d ed. 2000 & Supp. 2005) ("The test for sufficiency ought to be whether it is fair to defendant to require him or her to defend on the bases of the charge as stated in the particular indictment or information. The stated requirement that every ingredient or essential element of the offense should be alleged must be read in the light of the fairness test just suggested.") (emphasis added). However, a common reading and understanding of the indictment clearly suggest that I am only charged in the present tense, and I am only prepared to defend against that charge as stated precisely in the alleged indictment.

The statute, and the indictment both do not contain any additional terms or phrases such as: "at anytime"; "past or present"; "previously"; "before"; "theretofore"; "precedingly"; "prior"; "formerly"; "earlier"; "heretofore"; "already been"; "past", which would clearly inform the accused that he is being charged in the past tense without any uncertainty. The use of these terms or phrases in the statute would have authorized that element of the offense to be tried in the past tense at trial. For example, see 18 U.S.C. § 922(k) ("It shall be unlawful for any person knowingly to... possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce." (emphasis added)).

In this regard, the U.S. Supreme Court in Keene Corp. v. United States, 508 U.S. 200,

6.

208 (1993), explicitly held "when Congress includes particular language in one section of a statute but omits it in another... it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Therefore, it must be presumed that Congress acted intentionally and purposely when they included "at any time" in 18 U.S.C. §922(k), but omitted this language from the other section of the same statute in 18 U.S.C. §922(g).

"The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." Bedroc Ltd., LCC v. United States, 541 U.S. 176, 183 (2004)(internal citations omitted). It should not be "presumed that the legislature was ignorant of the meaning of the language it employed." Id. at 186-87. When interpreting a statute, the court begins with the statutory text and interprets "statutory terms in accordance with their ordinary meaning, unless the statute clearly expresses an intention to the contrary." United States v. Neal, 776 F.3d 645, 652 (9th Cir. 2015); see also Walters v. Metro. Educ. Enters., Inc., 519 U.S. 202, 207 (1997); Caminetti v. United States, 242 U.S. 470, 485-86 (1917).

In the context of interpreting statutes, the Supreme Court has consistently held that statutory construction "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009)(citation omitted). Ordinary meaning is determined by the dictionary definition of the word and the context in which it is used. See, e.g., Navarro v. Encino Motorcars, LLC, 845 F.3d 925, 930-931, 2017 U.S. App. Lexis 344 (9th Cir. 2017)(relying on Random House Dictionary of the English Language (1966); Webster's Third New International Dictionary (1965); Oxford English Dictionary (1933); and American Heritage Dictionary of the English Language (1st ed 1969)); see also Briggs v. Merck Sharp & Dohme,

7

796 F.3d 1038, 1045-46 (9th Cir. 2015)(relying on Webster's Third New International Dictionary 1819 (2002))

Here, the language of 18 U.S.C. §922(g) is clear and plain, but the plain language does not express an intention to be applied on past shipment or transportation of a firearm. Thereby, it must be assumed that the ordinary meaning of the language is the statute "accurately expresses the legislative purpose," Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). Additionally, the ordinary meaning of the language in the statutes must be enforced because the statute does not "clearly expresses an intention to the contrary." See United States v. Neal, 776 F.3d 645, 652 (9th Cir. 2015). Where "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989).

In United States v. Wiltberger, 18 U.S. 76, 5 Wheat. 76 (1820), the U.S. Supreme Court also held "The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated." Id. at 96. (emphasis added)

"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand

8

to be proscribed." United States v. Harriss, 347 U.S. 612, 617 (1954); see also Lambert v. California, 355 U.S. 225, 228 (1957); Jordan v. DeGeorge, 341 U.S. 223, 230-232 (1951); Dunn v. United States, 442 U.S. 100, 112 (1979)

Perhaps a person who is charged with "receipt" could be charged under the current wording of the statute, but only if that person is the direct recipient, because that person would directly receive the firearm that has been shipped at that time, taking the firearm into possession. But after the initial receipt, and for a person who was not the direct recipient, it would only be considered a charge for "possession" of a firearm that "had been" shipped.

A prime example of the normal usage for this grammatical construction at issue is commonly applied as follows: "Joe has been incarcerated." This language ordinarily means that Joe is currently incarcerated due to his continuous incarceration. But after Joe is released from detainment, the correct language would be "Joe had been incarcerated." Similarly, "Joe went to the post office earlier, and the package has been shipped." This language ordinarily means that the shipment is currently on the way to the recipient. But once the package arrived at it's destination, the correct language would be "The package had been shipped by Joe." That is because the shipment was completed, and is no longer in the process of shipping.

The Fifth Amendment's Due Process Clause "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." See Alphonsus v. Holder, 705 F.3d 1031, 1042 (9th Cir. 2013) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)). "A criminal statute must clearly define the conduct it proscribes. If it does not give a person of ordinary intelligence fair notice of its scope, United States v. Batchelder, 442 U.S. 114, 123, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979), it denies due process." (quoting Bond v. United States, 134 S. Ct. 2077, 2097 (2014)).

9

In United States v. Brewer, 139 U.S. 278 (1891), the U.S. Supreme Court held "laws which create crime ought to be so expressed that all men subject to their penalties may know what acts it is their duty to avoid," and "before a man can be punished, his case must be plainly and unmistakably within the statute." Id. at 288 (emphasis added).

Here, the statute 18 U.S.C. § 922(g) forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess and speculate at its meaning, and differ as to its application. This clearly violates due process. A clear reading of the text provides no refuge for the government. The phrase, "has been shipped" understood in the normal way, includes conduct occurring throughout a crime's commission; but does not precisely look to the past with specific language, and cannot fairly be read to include wholly past shipments with a certainty. "Congress could have phrased its requirement in language that looked to the past... but it did not choose this readily available option" Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 57 (1987).

Instead, Congress failed to include past tense language in 922(g), such as "at any time," like they purposely did in §922(k), which ultimately means that Congress intentionally left the past tense language out of the statute. This is because "Congress knows how to target past violations when it wants to do so." Id. at 63-64, N4.

Nonetheless, the courts usually look to Congress choice of verb tense in construing statutes. See United States v. Wilson, 503 U.S. 329, 333 (1992) (holding that "Congress' use of a verb tense is significant in construing statutes") The Dictionary Act also provides significance to the choice of verb tense. It provides in relevant part: "In determining the meaning of any Act of Congress, unless the context indicates otherwise... words used in the present tense include the future as well as the present." See 1 U.S.C § 1. Thus, the Dictionary Act evidently

10

instructs us that the usage of present tense generally does not include the past in determining the meaning of an act of congress, and the context of § 922 (g) does not indicate otherwise.

Accordingly, a statute that regulates a firearm that "has been shipped" is not readily understood to encompass a firearm that "had been shipped," therefore, 18 U.S.C. § 922 (g) is void for vagueness by it's failure to provide a fair warning in plain terms to a person of ordinary intelligence, and leaving the public in the dark, uncertain as to the conduct it prohibits with regard to the current standard of judicial enforcement.

## CONCLUSION

For the reasons listed, petitioner hereby moves the court to enter an order granting this motion to dismiss for statutory vagueness.

Respectfully submitted, under duress without prejudice as a matter of right.

Ambassador Michael Parsons

## CERTIFICATE OF SERVICE

As a matter of right, by special appearance only, petitioner, Ambassador Michael Parsons of the Sovereign Tsilhqot'in Nations Country of Chilcotin, hereby certify this motion is true and correct to the best of my knowledge, addressed to the U.S. District Court in Lincoln Nebraska this 21st day of May 2018.

Under duress without prejudice

Ambassador Michael Parsons
Tsilhqot'in Nations Country of the Chilcotin

AMBASSADOR Michael Parsons
Printed Name

( 350 1687 )  ( 11/22 )
Data #     Module #

Douglas County
DEPARTMENT OF CORRECTIONS
710 SOUTH 17TH STREET
OMAHA, NEBRASKA 68102

OFFICIAL CORRESPONDENCE
MAY 21, 2018




U.S. DISTRICT COURT
100 CENTENNIAL MALL, SUITE 587
FEDERAL BUILDING
LINCOLN, NEBRASKA 68508

68508-385999

RECEIVED
MAY 29 2018
CLERK
U.S. DISTRICT COURT
LINCOLN