IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

                   Plaintiff,

     vs.

MICHAEL WAYNE PARSONS,

                  Defendant.

4:17CR3038

GOVERNMENT'S OMNIBUS BRIEF
IN RESPONSE TO MOTIONS

## FACTS

Michael Wayne Parsons stands charged with violating 18 U.S.C. § 922(g)(1) by possessing a firearm following a felony conviction.  Trial is scheduled to commence on August 6, 2018.  The defendant has filed numerous motions seeking various forms of relief.  This brief responds to all the defendant's motions.

## Motion to Produce Prior Testimony of Witnesses, Filing 105

The defendant seeks to receive, in advance of trial, transcripts of prior sworn testimony, including grand jury testimony, of any witnesses that will testify for the government.  The United States does not object to the Motion.

## Request for Federal Rule of Evidence 404(b) Evidence, Filing 106

The defendant asks for reasonable notice in advance of trial of the general nature of the evidence of other crimes, wrongs, or acts which it intends to introduce at trial to prove the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  The United States does not object to the Motion.

1

However, given the fact that the defendant has, at times, represented himself, the United States will set forth "other acts" evidence which the government believes is not within Rule 404(b) but which the defendant might believe to be within the rule.

The defendant is charged with being a Felon in Possession of a Firearm in violation of Title 18, United States Code, Section 922(g)(1).  The statute requires the government to establish that the defendant is a prohibited person by virtue of an earlier felony conviction.  The United States has filed a Notice of Willingness to Stipulate to Prior Felony Conviction, (Filing 62), wherein the government has offered to enter into a joint stipulation establishing that on or about the 11th day of January, 2017, the defendant had been previously convicted of a crime  punishable by imprisonment for more than one year.  If the defendant does not agree to the stipulation the United States intends to prove up his prior conviction by direct evidence.  That evidence will consist of certified copies of conviction records, a request to take judicial notice of certain Tennessee statutes setting forth the criminal penalties for the crime of conviction, and the testimony of a law enforcement officer who attended the Tennessee proceedings who will testify that the defendant is the same "Michael Parsons" who was the subject of the Tennessee proceedings.

The United States also intends to offer evidence that the defendant had failed to appear for trial in Tipton County, Tennessee, on January 10, 2017, and a warrant for his arrest was issued.  The government does not intend to offer evidence that the pending charges in that case were also for being a felon in possession of a firearm.  However, the

2

fact the defendant had failed to appear is relevant to the pending charges.  His fugitive status is a motive for him to possess a firearm.  It also appears from comments made by the defendant that he intends to claim that the firearm found in his airplane was not placed there by him and, in fact, was planted by law enforcement.  Thus, the fact of his status as a fugitive is relevant to his intent to possess the weapon.

The evidence is also relevant as it explains why he was arrested on January 12, 2017[1].  The FBI, working in tandem with state and local law enforcement, took Mr. Parsons into custody on an arrest warrant issued by the state court in Tennessee.  Absent evidence of the warrant, the jury will be left to speculate that Mr. Parsons was randomly, perhaps improperly, scooped up by law enforcement for no legal reason.

The reasons for actions taken by officers are relevant and are part of the *res gestae* of the offense charged.  United States v. LaDue, 561 F.3d 855, 857–58 (8th Cir. 2009). "In felon-in-possession cases, we have defined the scope of the *res gestae* to include the events immediately preceding the defendant's arrest."  Id. at 857.  "Although *res gestae* evidence sometimes implicates the defendant in other acts, we have concluded that where acts are inextricably intertwined with the charged crime, they are not extrinsic, and thus not merely character evidence governed by Federal Rule of Evidence 404(b)."  Id. at 858. In LaDue, a felon-in-possession case, the Eighth Circuit held it was proper for the jury to hear that the reason the officer chased after the defendant and ultimately took him into

---

[1] His arrest on January 12, 2017, is relevant as he was taken into custody at a hangar at the Arapahoe Airport, the same location where the plane and firearm were located.

3

custody was because the officer was responding to a "shots fired" call when he encountered the defendant running.  Id.

In United States v. Davidson, 449 F.3d 849 (8th Cir. 2006), another felon-in-possession case, the Eighth Circuit reached a similar result.  There the jury heard that the defendant was being pursued on a warrant for murder and assault.  Id. at 853.  The Court found the district court did not abuse its discretion in admitting the evidence as "the full description of why the detectives were there "was relevant … to explain the police conduct and to bolster officers' credibility."  Id.  The Court did suggest that there was "merit to Davidson's point that the detail about charges for which he was wanted had limited probative value, as any legitimate curiosity that arose in the jury regarding why the detectives were pursuing Davidson probably could have been satisfied with a less specific explanation that he was wanted on other charges, without specifying homicide and assault."  Id.  Consistent with the Court's ruling in Davidson, the United States suggests that if the court is concerned about the jury hearing that the defendant was being sought because he failed to appear for trial, the government, at a minimum should be allowed to tell the jury, in substance, "the defendant was arrested because he was wanted on a warrant for other charges."

**Motion to Allow for the Testimony of Stanley Stump, Sr., Filing 107**

The defendant requests the Court allow the taking of the testimony of Stanley Stump, Sr., allegedly the Hereditary Grand Chief, Chilcotin National Congress, by Skype rather than a personal appearance.  The defendant also requests that briefing be allowed

after his testimony is complete.  Without conceding the ultimate admissibility at trial or

in any other proceeding in United States District Court, the government does not object to

taking Mr. Stump's testimony via Skype.  While the United States can conceive of no

circumstance in which Mr. Stump's testimony would be admissible for any substantive

purpose, preserving his testimony via Skype would allow the parties to address its

admissibility in briefing and would also preserve the testimony in the record.  Thus, the

government does not object to this Motion for the limited purposes stated herein.

**Motion to Suppress Search, Filing 108**

The defendant has moved the court to suppress the evidence seized as the result of

the search of a 1964 Piper PA-28-140 Cherokee with an obscured tail number N6403W,

Serial Number 28-20471.  The search was conducted pursuant to a federal search warrant

issued by the United States District Court for the District of Nebraska under Case No.

4:17MJ3029.  The warrant was signed on March 20, 2017, and actually executed on

March 22, 2017.  The search took place in the hangar where the plane was stored at the

Arapahoe Airport in Furnas County, Nebraska.  The plane had been stored at that facility

since the defendant flew it there on January 11, 2017.  Parsons had been arrested at the

hangar on January 12, 2017, by representatives of both state and federal law enforcement.

At the time of the defendant's arrest, investigators did not know that he had flown

to the location.  Rather, investigators had assumed he had driven, or been given a ride, to

the vicinity of the airport and was only hiding out on the premises.  However, on the

same day he was arrested, but after officers left the scene, investigators were told by

Anthony Todd Weverka, the President of the Airport Authority, that Parsons had actually flown the plane to the airport.

On January 12, 2017, Furnas County Sheriff Kurt Kapperman located a set of keys that had been on Parsons' person when he was arrested.  In looking through the windows of the plane, Kapperman was able to see that there was luggage inside the plane.  Sheriff Kapperman tried the keys that had been taken from Parsons.  He found one that "actioned" the door of the aircraft.  He then locked the aircraft door and Sheriff Kapperman locked the aircraft and later secured the key into evidence.  At no point did Sheriff Kapperman conduct a search of the plane.

When Parsons was initially taken into custody there was no investigation ongoing into the possible commission of federal crimes.  Rather, the FBI was assisting in the capture of a state fugitive and the expectation was that he would be returned to the State of Tennessee through the extradition process.

On or about January 13, 2017, Sheriff Kurt Kapperman attempted to obtain a search warrant from the County Court of Furnas County.  The purpose of the warrant was to obtain fingerprint, DNA and hair follicle evidence, flight plans and ownership papers and any evidence of any other crime.  The Affidavit and Application for Issuance of a Search Warrant, (attached as Exhibit 1), opined that "forensic evidence is needed to provide a positive identification of who was previously was [sic] in physical control of the aircraft."  Although the affidavit said that Parsons "should be considered armed and dangerous" it only stated that the plane "may" contain evidence of "Parsons intent to

6

elude prosecution in Tennessee, and or a felon in possession of weapons." No facts were disclosed in the affidavit to support a finding of probable cause to believe that a weapon was present in the aircraft. The County Court judge refused to issue the warrant as, (according to Sheriff Kapperman), it was not "needed" inasmuch as Parsons was already in custody awaiting extradition to Tennessee.

On March 10, 2017, Anthony Todd Weverka, the President of the Airport Authority, told Sheriff Kapperman that he had opened the door of the plane at an earlier time and found that there were keys under the floor mat. Sheriff Kapperman would testify he did not believe Weverka as he, (Kapperman), had previously locked the plane. There is no evidence to suggest Weverka removed anything from the plane. He would likewise testify he did not move any firearms or ammunition into the plane.

On or about March 20, 2017, the FBI obtained a federal warrant to search the airplane. The federal warrant was obtained for the purpose of investigating different crimes than were the subject of the earlier state application. Specifically, the warrant was seeking evidence of violations of 18 U.S.C. § 1201, (kidnapping). The government will be asking the court to take judicial notice of the application, affidavit and warrant which is found at 4:17MJ3029.

The affidavit sets forth that after Parsons had been taken into custody, information was obtained indicating that one Suzanna (or Susann) Holland was attempting to arrange to have Parsons forcibly removed from the custody of state authorities. Holland, the self-described "Chief Justice" of the purported Universal Supreme Court of the Tsilhqot'In

7

Nation in British Columbia, Canada, had contacted a bounty hunter in New Orleans and offered him money to free Parsons, arrest Sheriff Kapperman, and arrest the state court judge in Tennessee who had presided over Parsons' state charges.  The bounty hunter had a background in law enforcement, (affidavit paragraph 10), and immediately reported the solicitation to law enforcement.  The bounty hunter agreed to assist investigators by placing monitored telephone calls to Holland.  Once it became clear that Holland was also taking to Anthony Todd Weverka and Parsons' wife, Pat Parsons, he also placed monitored calls to those two individuals.

The bounty hunter had contacted law enforcement on or about February 16, 2017. For the next several weeks the FBI conducted a covert investigation to determine whether others, (specifically Anthony Todd Weverka), were involved in the plot to free Parsons and arrest the Sheriff and the Judge.  The covert investigation lasted until on or about March 17, 2017.  During the investigation, the FBI did not seek to search the plane as that would have disclosed the fact of the investigation.  Further, investigators believed the plane to be secured at the airport.

Eventually the FBI sought and obtained the aforementioned federal search warrant.  The warrant was executed on or about March 22, 2017.  During the search investigators seized a substantial amount of evidence to include documents tying Parsons to the plane, documents setting forth his flight plan and the firearm and ammunition which are the subject of the instant prosecution.

The warrant authorized the seizure of several different categories of evidence. The items to be seized included firearms, ammunition, and ownership and registration papers. (Attachment B). The evidence justifying the seizure of the items designated in the warrant was detailed throughout the affidavit.

The evidence justifying the seizure of firearms and ammunition consisted of a showing that the defendant was on the run after failing to appear on charges of being a felon in possession of a firearm, (Paragraphs 8 and 26), the statements of a cooperating witness, (the bounty hunter), who stated that "there were firearms in the aircraft", (Paragraph 13), and consensually recorded conversations between the bounty hunter and Holland wherein Holland stated there were firearms located in the airplane that the CHS could use during the arrest of the Sheriff and the Judge. (Paragraph 30).

Probable cause supporting the seizure of documents was also set forth in the affidavit. (Paragraph 27). Essentially the affidavit posited that ownership and registration documents for the plane would most naturally be found within the plane.

Presented with the fact that investigators actually obtained a warrant, the defendant is forced to attack the sufficiency of the affidavit and the propriety of the warrant's issuance. The defendant's burden is a heavy one. The defendant must first make a substantial preliminary showing "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks v. Delaware, 438 U.S. 154, 155–56 (1978). "In the event that at that hearing the allegation of perjury or reckless disregard is established by the

9

defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id. at 156.  In order to be entitled to a *Franks* hearing the defendant has to make a showing "that the alleged false statement or omission was necessary to the probable cause determination." United States v. Crissler, 539 F.3d 831, 834–35 (8th Cir. 2008).  "Such a showing is not easily made." Id.

What, then, are the material misstatements or omissions identified by the defendant?  He complains the affidavit is deficient in the following respects:

- It cites hearsay evidence

- There is no statement of veracity regarding the CHS

- The Sheriff had conducted an inventory search of the plane before the federal warrant was issued

- The Sheriff had obtained an earlier state warrant

- The plane was left unattended for two months before it was searched by the FBI

(Motion to Suppress Search and Brief).  The United States will respond to each assertion in order.

**The affidavit relies on hearsay and there is no statement of veracity regarding the CHS**

The affidavit does contain hearsay. However, "it is uncontroverted that an affidavit can show probable cause even when based on hearsay statements of an anonymous informant." United States v. Smith, 462 F.2d 456, 458 (8th Cir. 1972), (citing Aguilar v. Texas, 378 U.S. 108 (1964). In fact, such reliance on hearsay evidence from informants is common:

> It is not unusual for an affidavit of a law enforcement officer to contain hearsay information from an informant, which, in turn, is based on other information gathered by that informant. *See* Spinelli v. United States, 393 U.S. 410, at 416-417, 89 S.Ct. 584, 21 L.Ed.2d 637, *discussing* Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Therefore, when a magistrate receives an affidavit which contains hearsay upon hearsay, he need not categorically reject this double hearsay information. Rather, he is called upon to evaluate this information as well as all other information in the affidavit in order to determine whether it can be reasonably inferred "that the informant had gained his information in a reliable way." *Spinelli, supra,* 393 U.S. at 417, 89 S.Ct. at 589. The magistrate must canvass the affidavit and the informer's tip as a whole and measure it against *Aguilar* standards in order to assess its probative value.

Smith, 462 F.2d at 460.

In the present case, the affidavit actually DID provide background information on the CHS. He was described as "having a background in law enforcement" and as a bounty hunter operating a fugitive recovery business who advertised his services on the internet. (Affidavit, paragraph 10). However, most importantly, the affidavit sets forth that the statements regarding the presence of firearms were contained in "consensually recorded conversations between the CHS and Holland." (Affidavit, paragraph 30). Thus, the court was not simply required to rely on the word of an unnamed cooperator. The conversation was recorded. That is a much stronger showing of veracity than simply a

description of his background.  Independent corroboration of an informant's statements is

a significant factor in assessing the presence of probable cause:

> When information supplied by an informant forms the basis for probable cause in
> a warrant, the 'core question in assessing probable cause ... is whether the
> information is reliable. *United States v. Nieman,* 520 F.3d 834, 839–40 (8th
> Cir.2008) (quoting *United States v. Williams,* 10 F.3d 590, 593 (8th Cir.1993)). In
> assessing such reliability, this Court considers several factors, such as (1) whether
> officers conducted a face-to-face interview with the informant, (2) the level of
> detail included in the information provided to law enforcement by the informant,
> and (3) whether law enforcement independently corroborated any of the
> information provided by the informant. *696 *United States v. Robertson,* 39 F.3d
> 891, 893–94 (8th Cir.1994) (interviewing an informant face to face "gives greater
> weight to an officer's decision to rely on that information," and "there is an
> inherent indicia of reliability in 'the richness and detail of a first-hand
> observation.' ") (quoting *United States v. Jackson,* 898 F.2d 79, 81 (8th Cir.
> 1990)); *United States v. Stropes,* 387 F.3d 766, 772–73 (8th Cir. 2004) (noting
> corroboration of information is a relevant factor in establishing probable cause).

United States v. Cowling, 648 F.3d 690, 695–96 (8th Cir. 2011).

The affidavit established that SA Czaplewski had reviewed documents and

interviews gathered during the investigation, (Affidavit, paragraph 5), and that

consensually recorded conversations between the CHS and Holland, Pat Parsons and

Anthony Todd Weverka had taken place.  The calls were quoted verbatim at various

points in the affidavit.  (e.g., Affidavit, paragraphs 16, 17, 20, 21).  The statements of the

CHS were further corroborated by the undercover FBI agent's meeting with Anthony

Todd Weverka who confirmed several aspects of the investigation.  (Affidavit,

paragraphs 21 and 23).  In sum, the affidavit, though containing hearsay, clearly

supported a finding of probable cause.

12

**The Sheriff had conducted an inventory search of the plane before the federal warrant was issued**

Other than making the bald assertion "it is believed by the Defendant that the Sheriff of Furnas County, Nebraska, had in fact conducted an earlier inventory search of the interior of the airplane and no evidence of any significance was discovered, and in fact the Sheriff may at one time secured a state court search warrant though the local courts", (Brief at 3), the defendant makes no evidentiary showing that such a search took place. In fact, there was no search, inventory or otherwise, conducted of the plane before the execution of the federal warrant.

**The Sheriff had obtained an earlier state warrant**

As noted earlier in this brief, the Sheriff attempted to obtain a state search warrant for "fingerprint, DNA and hair follicle evidence, flight plans and ownership papers and any evidence of any other crime." He did not obtain the warrant and a search was not executed. The state search warrant affidavit, (only a page in length), was not focused on the same crime being investigated by the FBI and did not contain the detailed information contained in the affidavit of SA Czaplewski, (16 pages in length). It is not surprising that one warrant was issued while the other was not. In any event, the sufficiency of the federal search warrant affidavit is judged by the contents of the affidavit and, as noted earlier, the affidavit cites ample probable cause.

**The plane was left unattended for two months before it was searched by the FBI**

The defendant's complaints regarding the length of time the plane was in the hangar do not really support his argument that the affidavit does not contain probable

13

cause.  In addition, <u>Franks v. Delaware</u>, is not implicated since the fact of the passage of time from the defendant's arrival in Arapahoe to the date of the search warrant application is fully set forth in the affidavit.  That span of time was certainly not hidden from the court.

As noted previously, the FBI did not search the plane before Mid-March of 2017 because a covert investigation of a potential kidnapping plot was being investigated and one of the suspects was the President of the Arapahoe Airport Authority.  A search warrant would have disclosed the existence of the investigation.

Although not couched in such terms, the defendant's arguments regarding the passage of time actually implicate the issue of "staleness".

> "A warrant becomes stale if the information supporting the warrant is not 'sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search.'" *Colbert*, 828 F.3d at 727 (quoting *Brewer*, 588 F.3d at 1173). The specific context and nature of the warrant must be examined for each case; "[t]here is no bright-line test for determining when information in a warrant is stale." *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010) (quoting *United States v. Pruneda*, 518 F.3d 597, 604 (8th Cir. 2008)). "Important factors to consider in determining whether probable cause has dissipated ... include the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." *Colbert*, 828 F.3d at 727 (omission in original) (quoting *Brewer*, 588 F.3d at 1173). A "lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." *Lemon*, 590 F.3d at 614 (quoting *United States v. Horn*, 187 F.3d 781, 786 (8th Cir. 1999)).

<u>United States v. Johnson</u>, 848 F.3d 872, 877 (8th Cir. 2017).  The probable cause in the instant case had not become stale by the time of the application for search warrant.

The affidavit clearly set forth that the plane had arrived in Arapahoe on or about January 11, 2017, and had been sitting in a hangar continuously up until the application for the federal warrant on or about March 20, 2017. It was represented that the Sheriff had locked up the plane and checked the key into evidence. (Affidavit, paragraph 9). The affidavit related that Anthony Todd Weverka had "confirmed to both Holland and the CHS that Parsons' belongings were still inside the aircraft and that no one had tampered with the aircraft since Parsons landed." (Affidavit, paragraph 13). Lastly, the Sheriff had checked on the plane and confirmed it had not been tampered with. (Affidavit, paragraph 22).

One last point needs be made. Even if it is determined there is some technical deficiency in the affidavit, that does not mean the evidence should automatically be suppressed. That is because even if an affidavit is determined to be deficient, the good-faith exception would apply as long as the officer's reliance was objectively reasonable. United States v. Jackson, 784 F.3d 1227, 1230–31 (8th Cir. 2015).

The government respectfully submits the affidavit cited ample probable cause and there has been no substantial showing made that any material false statements or omissions are contained in it. As such, no hearing should be granted on Filing 108.

## Motion in Limine, Filing 109

The defendant has filed two Motions in Limine seeking the exclusion of several different categories of evidence. The government will respond to each request in sequence.

**Reference to evidence surrounding the Defendant's arrest, prosecution and conviction for his Tennessee state court conviction from Tipton County, Tennessee of November 23, 2009.**

As noted earlier in this brief, one of the elements the government has to prove is that the defendant was a prohibited person by virtue of an earlier felony conviction. Unless he stipulates to his status, the United States will necessarily be required to present independent evidence of his prior conviction. That said, the government has no intention of delving into, or presenting, the underlying facts supporting the 2009 conviction.

**Any evidence relative to outstanding charges the Defendant may still have pending in the State of Tennessee.**

The defendant was taken into custody in Furnas County, Nebraska, on January 12, 2017, because he had failed to appear for trial in Tipton County, Tennessee, and a warrant had been issued for his arrest. The charges he failed to appear on were state charges for being a felon in possession of a firearm. To the government's knowledge, those charges are still pending.

The government does not intend to present evidence in its case-in-chief[2] that the defendant was awaiting trial on charges of being a felon-in-possession of a firearm. However, as discussed in an earlier section of this brief, ("Request for Federal Rule of Evidence 404(b) Evidence, Filing 106", pages 1-4), the United States does believe it is

---

[2] Should the defendant take the stand and testify that he did not know a firearm was present on the plane, the United States may well seek to explore on cross-examination the facts underlying the pending charge in Tennessee as, depending on the nature of the defendant's testimony, such evidence might be relevant to the charges pending in this district.

16

relevant that the defendant had failed to appear and was arrested on a warrant.  While the arguments in the earlier section will not be repeated here, in sum, the government's position is that such evidence is probative of the defendant's knowledge that a firearm was present in the airplane and, also, helps explain to the jury the proper reasons for the defendant's arrest.

## Motion in Limine, Filing 110

In his second Motion in Limine, Filing 110, the defendant seeks the exclusion of additional evidence.  The government will address each of the requests in order.

## Reference to evidence that on January 11, 2017 FBI in Grand Island, Nebraska were apparently contacted by the Memphis, Tennessee FBI advising that a trace of Parson's cell phone activity led them to believe that the Defendant was in the vicinity of Apapahoe Airport in Furnas County, Nebraska.

The government does intend to offer evidence that the defendant was located at the Arapahoe Airport as the result of a trace of his cell phone activity.  The reference to the trace will only be in passing and not offered as substantive proof of the defendant's location.  Rather it will only be offered to explain why federal, state and local officers descended on the airport to effectuate the arrest of Mr. Parsons.  It is difficult to glean any prejudice that would occur through the admission of such evidence.

The only reason listed by the defendant in support of his argument that the evidence should be excluded is that it is hearsay.  (Motion in Limine, Filing 110, paragraph 1).  The United States respectfully submits the evidence is not hearsay because it is not going to be offered to prove the truth of the matter asserted.  Rather, it is to be

offered to explain why officers showed up at the airport and arrested the defendant. When offered for that purpose, the evidence is not hearsay and is admissible.  "[A]n out of court statement is not hearsay when offered to explain why an officer conducted an investigation in a certain way."  United States v. Tenerelli, 614 F.3d 764, 772 (8th Cir. 2010);  United States v. Londondio, 420 F.3d 777, 789 (8th Cir. 2005), (Statements offered to show the reason for police action are not offered for the truth of the matter asserted and are not hearsay).

**Any reference to contacts in February 2017, between a confidential human source (CHS), a bounty hunter in New Orleans, and the FBI concerning his discussions and dealings with a Sue Holland who apparently wanted to kidnap a judge and sheriff and wanted to help the Defendant escape from jail.**

The government does not intend to introduce any evidence of the kidnapping plot and does not intend to offer any evidence of conversations between the bounty hunter and the FBI and the bounty hunter's dealings with Sue Holland in its case-in-chief.  Thus, the government does not object to this part of the defendant's Motion in Limine.

There may be some evidence presented to establish that the defendant was on his way to Canada to meet up with Sue Holland and representatives of the purported Country of Chilcotin.  That evidence will be offered to explain the context of two telephone calls between the defendant and Sue Holland wherein he referenced great concern about getting his plane out of the custody of authorities, (this was before it was searched), and at one point referenced "the nation's item" which the evidence will demonstrate was the firearm.  However, the defendant was party to both calls and neither excerpt has any reference to the kidnapping plot.

**Refer to certain state statutes from the state of Tennessee that the Government proposes to do during their case in chief.**

The only state statutes the United States intends to offer are those which establish the defendant's 2009 was for a felony offense punishable by more than one year of incarceration. The government has offered to stipulate to the defendant's status. If he does not stipulate to his status the government will introduce conviction records showing the statute of conviction. The United States will then ask the court to take judicial notice of other Tennessee statutes setting forth the penalties for the crime of conviction. Should the defendant agree to the government's offer to stipulate, there will be no evidence introduced by the government relating to any Tennessee statutes.

**Motion to Dismiss for Statutory Vagueness, Filing 116**

The defendant has filed a Motion to Dismiss for Statutory Vagueness. The defendant's arguments appear, as near as can be deciphered, to blend two different legal issues. On the one hand, he is claiming the statute is "void for vagueness" because it "forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess and speculate at its meeting and differ as to its application." (Motion to Dismiss for Statutory Vagueness, page 10). Second, he is claiming the indictment is deficient in that it does not track the language of the statute.

The defendant's attack on the statute appears to be focused on the statute's reference to interstate commerce. (Motion at page 5). The Eighth Circuit has already rejected this argument. United States v. Conner, 886 F.2d 984, 985 (8th Cir. 1989).

19

He also claims the statute is deficient in another way but only by engaging in tortured wordplay.  Specifically, he attempts to argue that the statute does not make it clear that it applies to firearms that had previously been transported *in the past.*  (Motion at page 8).  A statute will not be found to be void for vagueness if the only way to create vagueness is through a strained interpretation of the statute.  <u>Fargo Women's Health Org. v. Schafer</u>, 18 F.3d 526, 535 (8th Cir. 1994).  The United States is unable to find a single case that directly addresses the defendant's argument.  The closest case the government can locate is <u>United States v. Urbano</u>, 563 F.3d 1150, 1154 (10th Cir. 2009).  In <u>Urbano</u> the defendant argued the only evidence the government had offered regarding the interstate nexus element was that the gun had "traveled in interstate commerce at some earlier time."  <u>Id.</u>  He argued the evidence was insufficient "because the gun was not an article *presently* traveling in interstate commerce."  <u>Id.</u>, (emphasis in original).  The Tenth Circuit rejected his argument finding the statute covered firearms that had been shipped in interstate commerce if it was proven "the firearm has traveled across state lines in the past."  <u>Id.</u> at 1155.

By the defendant's logic, the statute could be interpreted to only apply to firearms that are possessed at the exact moment they are being transported in interstate commerce.  That would be a ridiculous interpretation of Congressional intent.  Clearly Congress was intending to reach the illegal possession of firearms that had <u>previously</u> been transported in interstate commerce.

20

Lastly, the defendant claims the indictment is defective because of its use of the term "having", (as in "said firearm and ammunition having been shipped and transported in interstate commerce"), as opposed to "has."

An indictment adequately states an offense if it:

Contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted.

United States v. Hernandez, 299 F.3d 984, 992 (8th Cir. 2002) (quoting United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir. 1993)). An indictment is normally sufficient if its language tracks the statutory language. Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974).  It is proper to consider the indictment "in its entirety" in determining whether it is sufficient.  Doyle v. United States, 318 F.2d 419, 423 (8th Cir. 1963)

The defendant's focus on the word "having" is misplaced for many reasons.  One obvious reason is because it is only a part of the charge in the indictment.  Four lines earlier in the indictment, it is alleged the defendant "did knowingly possess in and affecting interstate commerce" the firearm and ammunition in question.  The language "in and affecting commerce" is taken verbatim out of the statute.  18 U.S.C. § 922(g). The Eighth Circuit has stated that including the manner in which a firearm affected commerce is proper pleading:

We agree with the government that by alleging that the firearm was transported in interstate commerce, the indictment stated the particular method by which the

21

firearm had been in, or affected, commerce. Thus the indictment "substantially states the element." <u>Id.</u>; <u>see</u>, <u>e.g.</u>, <u>Johnson</u>, 745 F.3d at 869 ("To convict an individual of being a felon in possession of a firearm, the government must prove ... the firearm was transported in interstate commerce."); <u>United States v. Carter</u>, 270 F.3d 731, 733–35 (8th Cir. 2001); <u>United States v. Hubbard</u>, 61 F.3d 1261, 1269 (7th Cir. 1995) (rejecting a virtually identical argument); <u>cf.</u> <u>United States v. Mosby</u>, 60 F.3d 454, 456 (8th Cir. 1995) ("The phrase 'in or affecting commerce' is a term of art that indicates a congressional intent to invoke the full extent of its commerce power.").

<u>United States v. Wyatt</u>, 853 F.3d 454, 457–58 (8th Cir. 2017).

The indictment is properly pled and tracks the statute. The defendant's Motion to Dismiss for Statutory Vagueness should be denied.

## **CONCLUSION**

The United States respectfully submits the defendant's motions should be denied except to the extent they have been conceded by the government.

UNITED STATES OF AMERICA, Plaintiff

JOSEPH P. KELLY
United States Attorney
District of Nebraska

By:    s/ Jan W. Sharp
JAN W. SHARP (#16934)
Assistant U.S. States Attorney
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Tel: (402) 661-3700
Fax: (402) 661-3084
E-mail: jan.sharp@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on June 25, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all registered participants.  I also hereby certify that a copy of the same was served by regular mail, postage prepaid, to the following non-CM/ECF participants: NONE.

                        s/ Jan W. Sharp
                        Assistant U.S. Attorney