IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **4:17CR3038** |
| vs. | |
| MICHAEL WAYNE PARSONS, | **FINDINGS AND RECOMMENDATION** |
| Defendant. | |

Pending before me are Defendant's motion to suppress, (Filing No. 108), and his motion to dismiss, (Filing No. 116).

Defendant claims the search of his airplane, conducted pursuant to a warrant on March 20, 2017, violated the Fourth Amendment. Defendant argues the warrant application lacked a sufficient showing of probable cause, and it contained hearsay, false information, and "information obtained, and received by, unreliable and compromised confidential informants." (Filing No. 108, at CM/ECF p. 2).[1]

Defendant claims the indictment must be dismissed as void for vagueness.

For the reasons stated below, both motions should be denied.

---

[1] The motion seeks an order "suppressing any searches, seizures, evidence and statements Parsons made to law enforcement officers on [March 20, 2017] and any evidence derived therefrom as violating his rights under the Fourth, Fifth and Sixth Amendments to the United States Constitution." (Filing No. 108, at CM/ECF p. 4).

Defendant's motion includes only conclusory statements regarding Fifth or Sixth Amendment violations. He does not argue that he was subjected to custodial interrogation and provided statements in violation of his Fifth Amendment rights, or that he was deprived of his right to assistance of counsel in violation of the Sixth Amendment. As such, the court deems the Fifth and Sixth Amendment arguments abandoned. Instead, the court interprets Defendant's motion as seeking to suppress all evidence obtained from the alleged illegal search of the airplane, including any statements, as arising directly from, or as the fruit of, a Fourth Amendment violation.

FINDINGS OF FACT

The warrant at issue authorized the search of a 1964 Piper PA-28-140 Cherokee with an obscured tail number N6403W, Serial Number 28-20471 which was parked in the hangar of the Arapahoe, Nebraska airport (hereinafter "Airplane"). The challenged search of the Airplane was conducted pursuant to a warrant. Where, as in this case, the warrant application was based solely on information presented in an accompanying written affidavit, "only that information which is found within the four corners of the [warrant] affidavit may be considered in determining the existence of probable cause." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (citations omitted).

The relevant facts within warrant affidavit are as follows:

During a 2014 parole search, officers found a .357 handgun, a .308 rifle and approximately 865 rounds of ammunition in Parsons' residence in Tennessee. Parsons was charged under Tennessee law with being a Felon in Possession of a Firearm, and his trial was scheduled to begin on January 10, 2017, in Tipton County, Tennessee. (Filing No. 115-1, at CM/ECF p. 5).

On November 14, 2016, Parsons applied for a FAA Certification to fly an airplane. That request was denied due to Parsons' felony record. (Id. at CM/ECF p. 14).

On January 11, 2017, the Federal Bureau of Investigation office in Grand Island, Nebraska was advised by FBI Memphis that it was trying to locate Parsons; that he was a fugitive and the subject of an ongoing criminal investigation into suspected Sovereign Citizen Extremism. (Id. at CM/ECF p. 4).

2

On January 12, 2017, Parsons was found and arrested without incident inside an administrative building at the Arapahoe Airport, which is located approximately two miles north of Arapahoe, Nebraska. (Id. at CM/ECF p. 6). At the time of the arrest, agents found a handwritten travel itinerary on a table near where Parsons was located. The itinerary described a flight route with notations for airports in Johnson County, Tennessee, and Cut Bank and Shelby, Montana. (Id. at CM/ECF p. 14).

After Parsons was arrested, Todd Weverka, the Board President of the Arapahoe Airport Authority and a part-time post office employee from Arapahoe, Nebraska, approached the Furnas County Sheriff and told him Parsons had flown the Airplane to Arapahoe. (Id. at CM/ECF p. 6). The Sheriff then took the keys found at the time of Parsons' arrest and was able to unlock the door of the Airplane. (Id.). The Sheriff did not search the Airplane; instead, he re-locked its door and secured the key into evidence. (Id.).

The following day, the Sheriff observed a posting on the Airplane's windshield: "NO TRESPASSING PERMITTED TO UNAUTHORIZED PERSONS, PROPERTY OF THE COUNTRY OF THE CHILCOTIN, VIOLATORS WILL BE PROSECUTED, By the Honorable Grand Chief Stanley Stump Sr." (Id. at CM/ECF p. 11).

On February 16, 2017, a bounty hunter and former law enforcement officer (a Confidential Human Source, hereafter "CHS") contacted FBI New Orleans to report a potential kidnapping plot and prison break in Nebraska. (Id. at CM/ECF p. 6). The CHS explained that a person identifying herself as Suzanna Holland, Chief Justice of the Universal Supreme Court of the Tsilhqot'in Nation (USCTN), had contacted the CHS and asked him to break Parsons out of jail and kidnap the Sheriff and the Tennessee judge who was presiding over Parsons' trial. According to the CHS, Holland explained that once the Tennessee judge and Sheriff were kidnapped, they would be placed in the Airplane and Parsons would fly the Airplane to the Tsilhqot'in Nation in British Columbia to face indictments issued by the USCTN. The CHS reported

3

that in exchange for his assistance, Holland offered a $5,000 down payment with the remaining $250,000 paid upon arrival in the USCTN. Holland transmitted a contract along with the USCTN indictments for the CHS' review. (Filing No. 115-1, at CM/ECF p. 7).

The contract was amended on March 3, 2017, because Holland did not have $5,000.00 in cash. According to the CHS, Holland stated Parsons' wife, Pat Parsons, would provide the Parsons' vehicle and the Airplane as a down payment and collateral for CHS' services. (Id. at CM/ECF p. 7). In later conversations, both Holland and Pat Parsons told the CHS that firearms were located in the Airplane. (Id.).

According to the CHS, Holland stated she received the Sheriff's home address from Weverka. Consistent with that statement, during a consensually recorded phone call between Weverka and the CHS, Weverka stated he had provided the Sheriff's home address to Holland. (Id. at CM/ECF pp. 8, 11).

On March 6, 2017, an FBI Undercover Employee (UCE) met with Pat Parsons in Tennessee. During that meeting, the UCE received a pickup truck and motorcycle to apply as the $5,000 down payment for the CHS' services. Pat Parsons then contacted Holland to state the vehicles were transferred. Holland later contacted CHS to state the vehicles were transferred. (Id. at CM/ECF p. 8).

In numerous consensually recorded conversations between the CHS and Holland, the following details of the operation were discussed. (Id. at CM/ECF p. 10). Holland told the CHS that there were firearms in the airplane, and the CHS could use these weapons to arrest the Sheriff and the Tennessee judge. (Id. at CM/ECF p. 14). Holland explained the CHS must do whatever had to be done—including violence and bodily harm if necessary—to free Parsons from jail and kidnap the Sheriff and the Tennessee judge. Holland and the CHS agreed that the CHS would forge a transfer order and then pose as a Tennessee officer sent to transport Parsons from Nebraska to Tennessee. Holland and the CHS

4

discussed how the Sheriff and Tennessee judge would be transported to the USCTN, with Holland assuring the CHS that "U.S. authorities could not touch the CHS or the CHS's associates and they would be free from any prosecution in the U.S." (Filing No. 115-1, at CM/ECF p. 9). She explained that after arrival in the USCTN, the CHS and his associates would arrest the members of the Tribal Council, thereby unfreezing funds accumulated from logging operations being performed on tribal land, with these unfrozen funds used to pay the remainder of the $250,000 contract price. (Id. at CM/ECF p. 10).

On March 14, 2017, the Sheriff confirmed that the Airplane had not been tampered with, and he observed that the "No Trespassing" placard was still affixed to the Airplane. (Id. at CM/ECF p. 11).

On March 16, 2017, Weverka met with the OM UCE in Arapahoe, Nebraska. During that meeting, Weverka confirmed that he would continue to assist in returning the Airplane to Parsons; that he (Weverka) considered Parsons a victim of the criminal justice system. (Id.).

Between March 8, 2017 and March 17, 2017, Weverka and the Sheriff spoke on the phone several times, each call being recorded. During those calls, Weverka stated he had disclosed the Sheriff's address to people from the USCTN who were coming to retrieve the Airplane. Werverka warned that the Sheriff may be in danger. (Id. at CM/ECF pp. 12-13).

When Weverka met with the Sheriff on March 17, 2017, Weverka disclosed that he regularly speaks with Holland by telephone to discuss the status of the Airplane. Weverka stated there was a plan in place for the USCTN to kidnap the Sheriff and take the Airplane. (Id. at CM/ECF p. 12).

On March 20, 2017, FBI Special Agent Monte Czaplewski submitted the warrant application to the undersigned magistrate judge. After reviewing the

5

application and accompanying affidavit, I concluded there was probable cause to believe a search of the Airplane would reveal evidence of ongoing criminal conduct. The warrant was signed on March 20, 2017. It was executed on March 22, 2017 at 9:45 a.m. (Filing No. 115-2).

On April 19, 2017, an indictment was filed charging Defendant as follows:

On or about the 11th day of January, 2017, in the District of Nebraska, MICHAEL WAYNE PARSONS, having been convicted of a crime punishable by imprisonment for a term exceeding one year, to wit: aggravated assault on November 23, 2009, in the Circuit Court of Tipton County, Tennessee, did knowingly possess in and affecting interstate commerce a firearm and ammunition, that is, a Rock River 5.56 LAR-15 assault rifle, 637 rounds of ammunition (87 rounds of .223 ammunition further identified as Light Armor Piercing ammunition and 550 rounds of .300 Blackout ammunition), said firearm and ammunition having been shipped and transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(1).

(Filing No. 1).

## ANALYSIS

### I. **Motion to Suppress**.

Defendant challenges the search of the Airplane on for two reasons: 1) "the Affidavit supplied did not meet judicial standards of probable cause," (Filing No. 108, at CM/ECF p. 2); and 2) the application included false information and concealed material information, and had the full truth been disclosed, the judge would not have issued the warrant. (Id. at CM/ECF p. 3).

6

A. Probable Cause.

A search warrant is valid if a neutral, detached judge determined there was probable cause to believe evidence, instrumentalities, fruits of a crime, or contraband may be found in the place to be searched. Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998) (citing Warden v. Hayden, 387 U.S. 294 (1967)). Probable cause exists if, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Walden, 156 F.3d at 870 (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). Probable cause is "a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Judges must read applications and affidavits with common sense and not in a grudging, hyper-technical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965).

Defendant argues the warrant affidavit is deficient because the affiant officer relied on hearsay, and there are no statements in the affidavit attesting to the trustworthiness of the CHS and the veracity of his statements. (Filing No. 108, at CM/ECF p. 2).

As clearly reflected in the warrant affidavit, the investigation at issue was performed through the combined efforts of the Sheriff and FBI agents in Tennessee, New Orleans, Omaha, and Grand Island, with the Grand Island FBI agent ultimately signing the warrant application. Contrary to Defendant's argument, under the circumstances outlined in the warrant application, "the knowledge of one officer is the knowledge of all," and "in the operation of an investigative or police agency the collective knowledge and the available objective facts are the criteria to be used in assessing probable cause." United States v.

7

Stratton, 453 F.2d 36, 37 (8th Cir. 1972). The affiant officer was entitled to rely on hearsay received from other officers: He was not limited to presenting information derived from only his own contacts and observations. United States v. Edwards, 891 F.3d 708, 711–12 (8th Cir. 2018) ("probable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation;" it need not be based solely upon the information within the knowledge of the affiant officer if there is some degree of communication among the officers); United States v. Rowe, 878 F.3d 623, 628 (8th Cir. 2017) (holding probable cause to search a vehicle may be based on the collective knowledge of all law enforcement officers involved in the investigation).

Parsons argues the CHS was an unknown informant, and his statements cannot be considered in determining whether the application provided a showing of probable cause. While it is true that the affidavit does not specifically attest to the CHS' veracity, information provided by an outside source, even an anonymous tip, can be supplemented and its reliability corroborated by independent police investigation. United States v. Warner, 894 F.2d 957, 959 (8th Cir. 1990). Further, "information provided by one informant may be corroborated with specific, consistent details provided by a second informant, and . . . the tips of two informants may be reciprocally corroborative, rendering their information enough to support a finding of probable cause." U.S. v. Leppert, 408 F.3d 1039, 1041 (8th Cir. 2005).

Here, the CHS' statements were abundantly corroborated, and cross-corroborated, through the personal contacts between an FBI agent and Holland, Holland and Weverka, the Sheriff and Weverka, an FBI agent and Weverka, and the calls, many of which were recorded, between the CHS and Weverka and between the CHS and Holland. In addition, those statements explained the flight

itinerary found when Parsons was arrested and Parsons' motivation to apply for FAA certification to pilot an airplane.

A court reviewing a warrant application does not evaluate each piece of information independently, but considers the cumulative meaning of all of the facts. United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002). Under the totality of information within the warrant affidavit, the corroboration of the CHS' tip was fully evident within the warrant application presented to the undersigned magistrate judge.

Even assuming that, upon further reflection, the undersigned magistrate judge concluded the warrant application did not provide sufficient probable cause, the search of the Airplane would still be valid under the Leon good-faith exception. Under the good-faith exception to the exclusionary rule, evidence seized pursuant to a search warrant will not be suppressed if the executing officers' reliance upon the warrant was objectively reasonable. United States v. Leon, 468 U.S. 897, 916 (1984). The Leon good-faith exception may not be applicable under certain circumstances.[2] But here, the warrant was clearly grounded on sufficient indicia of probable cause, it was facially valid, and there is no evidence to support a finding that the undersigned magistrate judge was misled by false information within the application, or that the warrant was "rubber-stamped" at the government's request.

---

[2] Leon good faith does not apply when 1) the judge issuing the warrant was misled by an affiant's false statements; 2) the issuing judge wholly abandoned his or her judicial role; 3) the affidavit is so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable; or 4) the warrant is so facially deficient that the officers cannot reasonably presume it to be valid. Leon, 468 U.S. at 923.

9

B.  Franks Challenge.

Defendant claims the warrant to search his Airplane was invalid because the warrant affidavit misrepresented the facts, concealed material facts, and misled the court. Defendant claims the affiant officer failed to disclose that the Sheriff unsuccessfully applied for a warrant, and he possibly searched the Airplane without a warrant, promptly after Parsons was arrested.

A warrant affidavit is considered presumptively valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). As such, when a defendant challenges a warrant application, a hearing is not required unless the defendant makes a threshold showing that the affiant deliberately misled the judge, and had the judge known the truth, the application would have been denied for lack of probable cause.

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Franks, 438 U.S. at 171. Even assuming the defendant shows information within the application was false, or that material information was omitted, a defendant is not entitled to a hearing unless he first shows that the warrant application, corrected to remove allegedly false information and to include allegedly concealed material facts, would not have supported a finding of probable cause. Franks, 438 U.S. at 170; United States v. Frazier, 280 F.3d 835, 845 (8th Cir. 2002).

10

There is no evidence supporting an allegation that the Sheriff searched the Airplane without a warrant following Parsons' arrest in January 2017. And there can be no argument that the warrant affidavit included information subject to the exclusionary rule: The warrant affidavit includes no information regarding the fruits of an alleged unlawful search of the Airplane. Moreover, the fact that a warrant application was denied in January is not material to the question of whether the evidence accumulated over the following months, as described in the application before me, supported a finding of probable cause.

Defendant has failed to present evidence supporting a Franks challenge, or to justify a Franks hearing. Defendant's motion to suppress under the Fourth Amendment should be denied.

**II. Motion to Dismiss**.

Defendant filed a pro se motion to dismiss. (Filing No. 116). Defense counsel states Defendant needs a ruling on this motion. The motion will therefore be considered.

An indictment is sufficient if it includes the elements of the offense, provides adequate notice of the charge, and enables the defendant to plead double jeopardy as a bar to further prosecution. Hamling v. United States, 418 U.S. 87 (1974); U.S. v. Hayes, 574 F.3d 460, 472 (8th Cir. 2009); United States v. Hernandez, 299 F.3d 984, 992 (8th Cir. 2002); United States v. Diaz-Diaz, 135 F.3d 572, 575-76 (8th Cir. 1998). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." Hernandez, 299 F.3d at 992.

The pending indictment against Defendant provides "a plain, concise, and definite written statement of the essential facts constituting the offense" of violating 18 U.S.C. § 922(g)(1). Fed. R. Crim. Proc. 7(c)(1). Under 18 U.S.C. § 922(g)(1):

> It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate . . . commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate . . . commerce.

18 U.S.C. § 922(g)(1).

Although the pending indictment against Defendant recites every element of a charge of felon in possession,[3] employing a convoluted discussion of English tense and grammar, Defendant nonetheless argues the indictment must be dismissed. Parsons argues that the interstate commerce element, as worded in the statute (and the indictment), is unconstitutionally vague and the indictment must be dismissed. "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Posters 'N' Things, Ltd. v. United States, 511 U.S. 513, 525. (1994) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)).

---

[3] The federal offense of felon in possession of a firearm requires the government to prove: 1) the defendant was previously convicted of a crime punishable by imprisonment exceeding one year; 2) defendant knowingly possessed a firearm; and 3) the firearm was in or affected interstate commerce. United States v. Walker, 393 F.3d 842, 846 (8th Cir. 2005); United States v. Sianis, 275 F.3d 731, 733 (8th Cir. 2002); United States v. Lapsley, 263 F.3d 839 (8th Cir. 2001).

"If the plain language of [a] statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. Therefore, if the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000). "When the statutory language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 296 (2006)(internal quotation marks omitted).

As held by the Eighth Circuit, the interstate commerce language of 18 U.S.C. § 922(g)(1) "clearly signals Congress's intent 'that the firearm has been, at some time, in interstate commerce." United States v. Conner, 886 F.2d 984, 985 (8th Cir. 1989) (quoting Scarborough v. United States, 431 U.S. 563, 575 (1976)); see also United States v. Urbano, 563 F.3d 1150, 1154 (10th Cir. 2009) (rejecting facial challenge to § 922(g)(1) where Defendant argued a nexus with interstate commerce is insufficient unless the gun was "presently" traveling in interstate commerce when the offense occurred). A charge which recites the interstate commerce element of 18 U.S.C. § 922(g)(1) is not subject to dismissal as unconstitutionally vague. Id.

Defendant's motion to dismiss should be denied.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that Defendant's motion to suppress (Filing No. 108), and his motion to dismiss (Filing No. 116) be denied in their entirety.

13

14

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

July 2, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge
