IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael Wayne Parsons,<br><br>    Defendant. | 4:17-CR-3038<br><br>MEMORANDUM AND ORDER |

  With respect to the defendant's offer of proof, at 3:00 pm on August 29, 2018:

  The courts of the United States may take judicial notice of treaties made by the United States with foreign governments. *United States v. Reynes*, 50 U.S. 127, 147-48 (1850). Accordingly, the Court will take notice of the text of the two international conventions the Court believes the defendant to be relying upon: the Montevideo Convention on the Rights and Duties of States and the Vienna Convention on Diplomatic Relations. But the Court finds that those conventions do not support the defendant's arguments.

  First, the defendant referred to the "Montevideo Convention on Consular Relations" which the Court assumes is a reference to the Montevideo Convention on the Rights and Duties of States, Dec. 26, 1933, 165 L.N.T.S. 19.[1] That treaty does confirm the proposition of customary international law that

---

[1] *See also Convention Between the United States of Am. & Other Am. Republics on Rights & Duties of States.*, 49 Stat 3097 (Jan. 18, 1935).

> [t]he political existence of the state is independent of recognition by the other states. Even before recognition the state has the right to defend its integrity and independence, to provide for its conservation and prosperity, and consequently to organize itself as it sees fit, to legislate upon its interests, administer its services, and to define the jurisdiction and competence of its courts.

*Id.*, art. 3., *see* Restatement (Third) of Foreign Relations Law § 202 (1987). But those provisions relate to the authority of states to regulate *their own affairs*—not to officials of foreign states when passing through other states. *Cf. Samantar v. Yousuf*, 560 U.S. 305, 314-15 (2010). Nothing in the Montevideo Convention permits a foreign entity to unilaterally confer immunity from prosecution on people present in the United States. *Cf. id.*

Instead, when foreign sovereign immunity is claimed, the Court's jurisdiction will be surrendered "on recognition, allowance and certification of the asserted immunity by the political branch of the government charged with the conduct of foreign affairs when its certificate to that effect is presented to the court by the Attorney General." *See Republic of Mexico v. Hoffman*, 324 U.S. 30, 34 (1945). If the claimed immunity has not been recognized by the political branch of government charged with conducting foreign affairs—that is, the State Department—then the Court may decide for itself whether the requisites of immunity exist. *Id.* at 34-35. But in making that decision, the Court inquires whether the ground of immunity is one which it is the established policy of the State Department to recognize. *Id.* at 36; *accord Samantar*, 560 U.S. at 312.

And there is nothing in the record here—nothing at all—to suggest that the State Department has an established policy of recognizing the kind of immunity asserted here. *See Samantar*, 560 U.S. at 312-13.

The other source of international law relied upon by the defendant—the Vienna Convention on Diplomatic Relations, April 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95—does not help him either. He points to Art. 39, § 1, which provides that

> Every person entitled to privileges and immunities shall enjoy them from the moment he enters the territory of the receiving State on proceeding to take up his post or, if already in its territory, from the moment when his appointment is notified to the Ministry for Foreign Affairs or such other ministry as may be agreed.[2]

But Art. 2 expressly provides that "establishment of diplomatic relations between States, and of permanent diplomatic missions, takes place by mutual consent." And Art. 4, § 1, expressly provides that "the sending State must make certain that the agrément of the receiving State has been given for the person it proposes to accredit as head of the mission to that State."

There is nothing here—either in the record, or the defendant's offers of proof—to demonstrate to the Court that the defendant has been accepted by the United States government as head of a diplomatic mission. (The defendant is claiming to be an "ambassador," which would be a head of mission. *See id*., Art. 14, § 1.) Nor is there anything to suggest that anyone else has been accepted by the United States government as a head of mission

---

[2] Those privileges and immunities include immunity from criminal jurisdiction. *Id*., Art. 31.

with authority to appoint other members of the diplomatic staff. *See id.*, Art. 7. And it is the executive that determines a person's status as representative of a foreign government. *Baker v. Carr*, 369 U.S. 186, 213 (1962); *see Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2089 (2015).

In addition, the Court notes that whether a party is entitled to immunity is a question of law, not fact. *Lopez v. Mendez*, 432 F.3d 829, 835 (8th Cir. 2005). So, even if there is evidence relating to sovereign immunity, it would be inappropriate to submit it the jury. *See id.*

For these reasons, IT IS ORDERED that the government's objections to the offer of proof are sustained.

Dated this 29th day of August, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge