1

```
             IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEBRASKA

_____
                               )
UNITED STATES OF AMERICA,      )   4:17CR3038
                               )   December 18, 2017
              Plaintiff,       )   1:33 p.m.
                               )   Lincoln, Nebraska
vs.                            )
                               )
MICHAEL WAYNE PARSONS,         )
                               )
              Defendant.       )
_____)

      TRANSCRIPT OF INITIAL APPEARANCE AND ARRAIGNMENT HEARING
           BEFORE THE HONORABLE CHERYL R. ZWART
              UNITED STATES MAGISTRATE JUDGE

                  A-P-P-E-A-R-A-N-C-E-S:

FOR THE PLAINTIFF:         MR. JAN W. SHARP
                           Assistant U.S. Attorney
                           1620 Dodge Street, #1400
                           Omaha, NE 68102


FOR THE DEFENDANT:         MR. JOHN C. VANDERSLICE
                           Federal Public Defender
                           100 Centennial Mall North
                           112 Federal Building
                           Lincoln, NE 68508

DIGITAL OPERATOR:          COLLEEN BERAN

TRANSCRIBER:               LORI J. SEHNERT
                           General Reporting Service
                           610 J Street, Suite 20
                           Lincoln, NE  68508

                              - - -


Proceedings recorded by digital sound recording, transcript produced
by transcription service.
```

1      (Tuesday, December 18, 2017, at 1:33 p.m.)

2           THE COURT: We're on the record in Case No. 4:17CR3038,
3      United States of America vs. Michael Wayne Parsons. Counsel,
4      please enter your appearance.

5           MR. SHARP: Good afternoon, Your Honor. Jan Sharp,
6      Assistant United States Attorney, appearing on behalf of the
7      United States.

8           MR. VANDERSLICE: And John Vanderslice on behalf of Mr.
9      Parsons.

10          THE COURT: Are you Michael Wayne Parsons?

11          THE DEFENDANT: Are we on the record?

12          THE COURT: Yes, we are.

13          THE DEFENDANT: Good morning, Your Honor -- good
14     afternoon. Let the record show that I was just brought in here
15     by force against my will, and the officer directly behind me
16     assaulted me, threw me to the ground, drug me in here. I've got
17     broken ribs, a broken arm, multiple injuries from previous
18     assaults, and I'd just seen another one by this gentleman behind
19     me. I want that to be on the record, first of all.

20          Also, the fictitious person in the birth certificate had
21     been surrendered to the Court and --

22          THE COURT: Please stay seated. You must stay seated.

23          THE DEFENDANT: The birth certificate there -- let the
24     record show that by special appearance, Ambassador Parsons of the
25     Chilcotin Nation, Country of the Chilcotin, the beneficiary, I'm

1    here, and I reserve all of my rights without prejudice, UCC
2    1-308, the Vienna Convention on Diplomatic Relations and the
3    Montevideo Convention, having already surrendered the fictitious
4    person and birth certificate into the well of this Court, this
5    Court lacks jurisdiction and I have no business with this Court.
6    Am I free to go?
7             THE COURT:  No.
8             THE DEFENDANT:  I will instruct you, as the trustee, to
9    dispose of the charge, pay off any debts, and compensate me for
10   the damages.
11            THE COURT:  Are you Michael Wayne Parsons?
12            THE DEFENDANT:  I'm not the fictitious person that you
13   seek.  You're seeking, according to this affidavit, a corporate
14   entity, Michael Wayne Parsons.  I am not that person.  I'm not
15   the fiduciary, surety, or trustee for that corporate entity or
16   trust.
17            THE COURT:  All right.
18            THE DEFENDANT:  I'm a live man.  This court is not an
19   Article III court.  As an ambassador of another country,
20   according to the Constitution, Article III, Section 2, all
21   matters pertaining to ambassadors, the original jurisdiction and
22   sole jurisdiction is with the Article III Section 2 Supreme
23   Court.  This is not that.  This Court lacks jurisdiction.
24            THE COURT:  All right.  Are you saying you are not
25   Michael Wayne Parsons?

1               THE DEFENDANT:  I am not the person in the Indictment.
2     That is a fictitious person.  That's what I'm saying.
3               THE COURT:  What is your name?
4               THE DEFENDANT:  I'm Ambassador Parsons of the Chilcotin
5     Nation, Country of the Chilcotin.  I am not the person -- the
6     fictitious person that is in this Indictment.  That is not me.
7               THE COURT:  All right.  Now, Ambassador Parsons, what
8     is your first name?
9               THE DEFENDANT:  I'm referred to as Ambassador Parsons
10    for the record.  I do not consent to this forum.  I do not
11    understand this forum.  I -- this gentleman just approached me
12    moments earlier and I tried to ask questions.  He could not
13    answer any of the questions.
14              THE COURT:  All right. What I'm going to do is, first
15    of all, we'll have to have an identity hearing.  And,
16    interestingly, my understanding is that you have refused to be
17    processed by the marshals, which would include your DNA and your
18    fingerprints.  You are hereby ordered to submit to processing by
19    the marshals.  They will go ahead and do that, even if it's
20    necessary to do it involuntarily.
21              THE DEFENDANT:  I would like to be heard on that
22    matter.  I don't consent to that.  Under the United States
23    Supreme Court ruling under Title 42 §2000bb, the Religious
24    Freedom Restoration Act, it is against my religious objections.
25    I do not do TB shots or I do not do any unknown foreign

1  substances into my body, and they're trying to force a TB test
2  upon me.  It's in violation of United States Code and Supreme
3  Court rulings that say that if I'm not symptomatic, they can't
4  force me against my will.  I've never done a TB test.  I don't
5  consent to those now.  It is against my rights as a human being
6  given to me by my creator, not to give up my DNA, which is in
7  violation of the Fifth Amendment also, and it's in violation of
8  the Universal Supreme Court Act of the Chilcotin Nation.  I am
9  not subject to the jurisdiction of this Court.  This Court does
10  not have jurisdiction over me.
11              THE COURT:  The Court does have jurisdiction over you.
12  You are hereby ordered -- and the marshals are hereby
13  ordered -- to process you, which would include the DNA and would
14  include the fingerprinting, and any other matters, and
15  photographing, I assume.
16              THE DEFENDANT:  I do not consent to this offer --
17              THE COURT:  It doesn't make any difference.
18              THE DEFENDANT:  I do not consent to this offer.  I do
19  not accept your offer and I --
20              THE COURT:  It's not an offer; it's an order.
21              THE DEFENDANT:  -- I do not -- an order is an offer and
22  I do not consent to these proceedings.  I am the beneficiary, the
23  living soul.  I am not the corporate fiction and this is after a
24  corporate fiction.  I'm a live man.
25              THE COURT:  At this time, though, I am going to have

1      Mr. Sharp advise you of what your -- the charges are against
2      Michael Wayne Parsons and the possible penalty on those charges.
3           Mr. Sharp.
4                MR. SHARP:  Mr. Parsons, the grand jury seated in the
5      District of Nebraska has returned a one-count Indictment that
6      charges you in that count with being a convicted felon in
7      possession of a firearm, a specifically described AR-15 rifle and
8      over 600 rounds of ammunition.  If you are convicted of that
9      offense, it's --
10               THE DEFENDANT:  Objection --
11               MR. SHARP:  -- punishable by up to 10 years in prison
12     and up to a $250,000 fine, or both.  There could also be up to a
13     three-year term of supervised release that would be imposed -- or
14     could be imposed after any period of incarceration.  Lastly, in
15     the event of your conviction, there would also be a $100 special
16     assessment that would be applied.  Do you understand what you're
17     charged with and what the possible penalties are?
18               THE DEFENDANT:  I don't understand any of this, because
19     I'm not the Michael Wayne Parsons that you're seeking.  That is a
20     corporate fiction.  And you said that -- you're referencing an
21     AR-15.  That's not what's listed in this sheet of paper in front
22     of me for that corporate fiction, so you're reading into the
23     record things that do not exist on this Indictment.  I object to
24     the reading of this Indictment, that it's fraud, because Mr.
25     Sharp did not read it as it is written.

1      THE COURT: All right. I'm going to advise you of your
2  constitutional rights. You have the right to remain silent.
3  What that means is, you do not have to say anything about the
4  charges in any court proceeding. You do not have to provide a
5  statement to the Government or anybody asking for information on
6  behalf of the Government. If you've already provided a
7  statement, you do not have to say anything more. And, if you
8  ever start answering questions, you can stop answering those
9  questions at any time. But you need to understand that what you
10 choose to say to anyone other than your lawyer can and will be
11 used against you. Do you understand your right to remain silent?
12     THE DEFENDANT: I don't understand any of this, nor do
13 I waive any of my rights. My rights are not constitutional.
14 They come from my creator, God. They're recognized by the
15 Constitution. The Constitution doesn't give me anything. This
16 Government doesn't give me anything.
17     THE COURT: Do you understand that you can remain
18 silent if you want to?
19     THE DEFENDANT: I don't understand what you're doing,
20 because you don't have jurisdiction.
21     THE COURT: All right. You have the right to counsel
22 and, if you cannot afford counsel, counsel will be appointed for
23 you at no cost to you. Do you want an attorney?
24     THE DEFENDANT: I don't waive any of my rights.
25     THE COURT: Do you want an attorney? It's a yes or no

1      question.
2              THE DEFENDANT:  I don't waive any of my rights.  I
3      don't understand what you're doing.  That's the point of this
4      whole matter, is, you're trying to bait-and-switch me from
5      counsel to an attorney.  They're two different things.  Legal
6      counsel and an attorney are two different things.
7              THE COURT:  The only people that can represent you in
8      this court as counsel are attorneys.
9              THE DEFENDANT:  What form of court is this?
10             THE COURT:  This is the United States District Court
11     for the District of Nebraska.
12             THE DEFENDANT:  And what form of court?
13             THE COURT:  The United States District Court for the
14     District of Nebraska.
15             THE DEFENDANT:  That's not the form of court.  Is this
16     an admiralty court?
17             THE COURT:  No.
18             THE DEFENDANT:  Is this a constitutional court?
19             THE COURT:  Yes.
20             THE DEFENDANT:  So you're following the Constitution?
21             THE COURT:  When I advise you that you have the right
22     to an attorney, yes.
23             THE DEFENDANT:  Do you recognize, Article III Section
24     2, as an ambassador, you don't have jurisdiction over me?
25             THE COURT:  I'm no longer answering your questions,

1          sir.
2                    THE DEFENDANT:  You're not following the Constitution
3          if you're not recognizing Article III.
4                    THE COURT:  I'm not -- no longer answering your
5          questions, sir, and I'm no longer listening to bogus arguments.
6                    THE DEFENDANT:  Then this Court is rogue and it's a
7          fraud.  Everything that you do from here on --
8                    THE COURT:  That, you can take up in motion.
9                    THE DEFENDANT:  You are violating international law.
10         You're committing war crimes right now by holding me -- now that
11         you know that I'm an ambassador, you're holding me against my
12         will.  You're committing international war crimes.  I have here a
13         document proving my position as an ambassador of the Chilcotin
14         Nation signed by the hereditary Grand Chief Stanley Stump, Sr.,
15         himself, from January 1st, 2016, before the alleged charge against
16         this fictitious entity, Ambassador Associate Justice Michael
17         Parsons of the Chilcotin Nation member -- and member of the
18         Chilcotin National Congress of the Country of Chilcotin, formerly
19         British Columbia, Canada.  "Michael Parsons is not a U.S.
20         citizen.  Michael Parsons has diplomatic immunity based on the
21         appointment to the position of ambassador by hereditary Grand
22         Chief of the Chilcotin Nation, Country of the Chilcotin, Stanley
23         Stump, Sr., on January 1st, 2016, and based on the Vienna
24         Convention on diplomatic relations Article 39, which states that
25         upon appointment by the country to the position of ambassador,

1 they are recognized and have diplomatic immunity.  Ambassador
2 Michael Parsons has been exonerated of all prior convictions and
3 charges from the United States by the Universal Supreme Court of
4 the Tsilhqot'in, which, under the rules of reciprocity and the
5 Constitution of the Chilcotin Nation and National Congress, must
6 be upheld by the United States.  And under Title 28 §1330, the
7 United States is bound to uphold that order.  Therefore, based on
8 all the above, I, hereditary Grand Chief, Stanley Stump, Sr.,
9 request immediate release of Ambassador Michael Parsons from
10 detention in accordance with the Vienna Convention on diplomatic
11 relations."
12        I have a copy of my tribal card, my status card.  It's blown
13 up so that you may see it.  It clearly lists me as the ambassador
14 of the Chilcotin Nation.  I will enter that for the record, along
15 with a copy of the letter from the Grand Chief, Stanley Stump,
16 Sr., himself.
17            THE COURT:  All right.  You have the right to a jury
18 trial.  At that trial, you'll have the right to see and hear any
19 witnesses who testify against you and to have them cross-examined
20 on your behalf.  You'll have the right to call witnesses for you
21 and, if they will not come voluntarily, you can get a court order
22 called a subpoena to make them come and testify.  At the trial,
23 you can testify yourself, if you want to, or you can exercise
24 your right to remain silent.  If you remain silent at the trial,
25 the jury will not be allowed to consider anything -- will not be

1   allowed to consider your silence in deciding whether you are
2   guilty.  And, at the trial the Government will not get a
3   conviction against you unless it is able to prove to every single
4   juror that you are guilty beyond a reasonable doubt.
5          This case is set for a -- I'm going to enter a not guilty
6   plea on your behalf.  This case is set for trial -- for a
7   five-day trial before Judge Gerrard for February 20th.  I'll order
8   reciprocal discovery under Rule 16 to be exchanged within 14 days
9   of today.  Pretrial motions need to be filed by January 17th.  Any
10  reason not to otherwise adopt the normal progression schedule,
11  Mr. Sharp?
12              MR. SHARP:  No, Your Honor.
13              MR. VANDERSLICE:  Judge, I'm going to be out of the
14  office during the week of February 20th, and I presume that we're
15  going to have a jury trial.  Would it be possible to move this up
16  a week or two?
17              THE COURT:  Sure.  Actually, he is not requesting
18  counsel, so I'm not sure that --
19              THE DEFENDANT:  I have not waived counsel.  I demand to
20  maintain all of my rights.  I've not waived anything.
21              THE COURT:  Okay.  Then you are appointed as counsel
22  and you'd like it earlier than that.  Is that --
23              MR. VANDERSLICE:  I would, Judge.  Yes, please.
24              THE DEFENDANT:  The problem we have is, this gentleman
25  has already told me he doesn't want this case.  He said he's got

1    plenty of cases, doesn't want this case, because of the publicity
2    apparently.
3              THE COURT:  I don't think it's because of that.
4         How about February 12th?
5              MR. VANDERSLICE:  That would be great, Judge.  Thank
6    you.
7              THE DEFENDANT:  I have no confidence in this
8    individual.  He has not given counsel.  He --
9              MR. VANDERSLICE:  Actually, could we go to February
10   5th --
11             THE COURT:  Sure.
12             MR. VANDERSLICE:  -- because I suspect that even though
13   it's scheduled for a five-day trial, it may take longer.
14             THE COURT:  Yes, February 5th, that sounds like a
15   wonderful time.
16             MR. VANDERSLICE:  Thank you.
17             THE DEFENDANT:  One problem we also have is that the
18   State has not shown any proof of a bond in this matter.  Does the
19   State have a bond in this matter?
20             THE COURT:  No, and that brings us to the issue of
21   detention.  What is the Government's position?
22             THE DEFENDANT:  No, not that bond.  I mean the bond for
23   the charge.
24             MR. SHARP:  Your Honor, I'm asking the Court to take
25   judicial notice of the Pretrial Services report.  We are

1  requesting detention both on flight risk and on danger to the
2  community.  In addition to what's in the Pretrial Services
3  report, I would proffer to the Court that prior to the events
4  that led to the instant Indictment, Mr. Parsons was awaiting
5  trial in Tennessee on release with a bracelet, which he cut off,
6  boarded a plane --
7             THE DEFENDANT:  Facts not in evidence.  Objection, Your
8  Honor.  Those facts are not in evidence.
9             MR. SHARP:  -- intending to fly to the country of
10 Canada when he was -- when he stopped here in the state of
11 Nebraska.
12            THE DEFENDANT:  None of those facts --
13            MR. SHARP:  For all of those reasons, we're asking for
14 detention.
15            THE DEFENDANT:  None of those facts are in evidence.
16 There's nothing in evidence --
17            THE COURT:  This is what we're going --
18            THE DEFENDANT:  -- to support that.  That is not true.
19            THE COURT:  This is what we're going to do --
20            THE DEFENDANT:  There was nothing cut off.
21            THE COURT:  If you'll allow me to speak, I am in
22 charge.
23            THE DEFENDANT:  Ma'am, I have a wife and a farm --
24            THE COURT:  It doesn't make any difference how many
25 wives you have or how many farms you have.  The real -- the

1    issue --

2           THE DEFENDANT:  Just one, for 33 years.

3           THE COURT:  The issue for me is whether you pose a risk
4    of flight and a risk of danger to the community if you are
5    released.

6           THE DEFENDANT:  I have -- I've never harmed --

7           THE COURT:  We're looking at having a detention
8    hearing.  I'm looking at having that -- and then, also, we have
9    to deal with this TB test issue.  There is *Turner v. Safley* gives
10   you the four factors that I have to look at in determining
11   whether I can order the TB test.  I also need to find out from
12   the marshals what their policy is, what the purpose of the policy
13   is, what alternatives we have, those types of things.  And so,
14   I'm kind of looking at doing the detention hearing on the
15   afternoon of the 20th.  Does that work?

16          MR. SHARP:  Of December?

17          THE COURT:  Yes.

18          MR. SHARP:  Yes.

19          THE DEFENDANT:  And, Your Honor, if I could -- I don't
20   know if you can see this.  I'm --

21          MR. VANDERSLICE:  Judge, the 20th, Wednesday, at what
22   time were you --

23          THE COURT:  I'm looking at 2:30.  Does that work for
24   everyone?

25          MR. SHARP:  Yes.

```
1                    MR. VANDERSLICE:  Yes.
2                    THE COURT:  We'll do a detention hearing at 2:30, and
3        I'd like to cover the TB issue at the same time.
4                 Between now and then, the marshals are entitled, if they
5        choose to, to place him in segregation.  Under the Eighth Circuit
6        law that you cannot -- under Eighth Circuit law you cannot expose
7        other people to potential risk of tuberculosis inside of a penal
8        institution.  And if that is a concern for the marshal or for the
9        Saline County jail, where he is being held, you may place him in
10       segregation until we make a decision as to the merits under the
11       Saf- -- Turner v. Safley criteria.
12                    THE DEFENDANT:  And currently I'm in segregation and
13       that's being addressed, Your Honor.  And I do have with me a copy
14       of my ordination.  I'm an ordained minister, Native American
15       minister, and the fact is, is that I have never done a TB test.
16       It is against my religion.  I don't do any drugs, shots, nothing
17       that I know is harmful.  And the manufacturer of that shot does
18       not -- they state they do not guarantee the safety or
19       effectiveness of it, because they can't guarantee what they put
20       in there.  That's the manufacturer.  And --
21                    THE COURT:  So your concern is about the shot itself
22       and the -- the pin prick test itself, is that correct?
23                    THE DEFENDANT:  I don't put anything into my body that
24       is potentially harmful or is not helpful.  I've never done a TB
25       test for that very reason.  And the fact is, is that I've been
```

1    locked up in the county jail in Phelps for 30 days and LCC up the
2    road here for going on a month-and-a-half, and they had me in
3    isolation for 10 days.  They recognized, "Okay, he's not
4    symptomatic."  I went into general population.  In Tipton County,
5    they know that I don't do these shots; straight into general
6    population.  In the West Tennessee detention facility, I was in
7    segregation not so much because of the TB shot, but because of
8    this false accusation of a flight risk.
9         If Your Honor looks at the record, you'll see that on the
10   false charge in Tipton County, the hearing that I did not attend
11   was because I never had a directive to appear.  Prior to that,
12   for going on two years, every month I would show up in that
13   courtroom like clockwork.  I was out on a $500 bond.  I live in
14   the community with my wife.  I've got a farm.  We're easily
15   accessible.  The only thing is that they never gave me an order,
16   a directive, or anything.  I had no indication I was supposed to
17   appear on that day.  Otherwise, I would've been there.  I was
18   working in my ministry with the Chilcotin Nation, working to help
19   them get a timber deal so they can get their kids back from the
20   foster system.
21              THE COURT:  All right.  And, Mr. Sharp, I'm also -- by
22   then we should have the DNA, fingerprints, those types of things,
23   so let's do the identity hearing fully, as well, on Wednesday
24   afternoon at two o'clock.
25              THE DEFENDANT:  Judge, I have one last issue, if I

4:17-cr-03038-JMG-CRZ   Doc # 203   Filed: 02/12/19   Page 17 of 17 - Page ID # 1822

17

1  could pass this up to you. It's a letter that I tried to get
2  faxed to you last week. I do have a suit, regular clothes, as
3  opposed to this. If I could request the graciousness of Your
4  Honor to allow me to be in proper dress.
5           THE COURT: Everybody who is detained that comes before
6  this Court, this is their proper dress, and so you will be
7  wearing that.
8       Anything else that we need to take up at this time?
9           MR. SHARP: No, Your Honor.
10          MR. VANDERSLICE: No, Judge.
11          THE COURT: We are in recess.
12          (Recessed at 1:52 p.m.)
13                                - - -
14                      C E R T I F I C A T E
15          I, Lori J. Sehnert, court-approved transcriber, certify
16 that the foregoing is an accurate transcript from the official
17 digital sound recording provided to me of the proceedings made in
18 the above-entitled matter.
19     s/Lori J. Sehnert            DATE:   February 12, 2019
20 Signature of Approved Transcriber
21                                - - -
22
23
24
25